**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **RAYMOND CAMPBELL,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-25-CV-260-LS** |
| | § | |
| **MARCO RUBIO, in his official capacity as Secretary of State; KRISTI NOEM, in her official capacity as Secretary of Homeland Security; Pamela Bondi, in her official capacity as Attorney General of the United States; and the United States of America,** | § § § § § § | |
| **Defendants.[1]** | § | |

**DEFENDANTS' MOTION TO DISMISS COMPLAINT**

[1] In accordance with Fed. R. Civ. P. 25(d), the successors of former Secretary of State Antony Blinken, former Secretary of Homeland Security Alejandro Mayorkas, and former Attorney General Merrick B. Garland are automatically substituted as the defendants in this action.

## TABLE OF CONTENTS


Introduction ........ 1
Procedural History ........ 2
A. Complaint ........ 2
B. Factual allegations in the Complaint ........ 2
1. Plaintiff's guilty plea and deferred adjudication ........ 3
2. Sex-offender identifier in Plaintiff's passport ........ 3
3. Plaintiff's allegations of "imminent harm" ........ 5
Arguments and Authorities ........ 5
I. Legal Standards ........ 5
A. Fed. R. Civ. P. 12(b)(1) ........ 5
B. Fed. R. Civ. P. 12(b)(6) ........ 6
C. *Pro se* pleadings ........ 7
D. As-applied versus facial challenges to a statute ........ 8
II. Jurisdiction ........ 10
A. Applicable Law ........ 10
B. Discussion ........ 12
III. Relevant Statutory Background ........ 13
A. The Sex Offender Registration and Notification Act ("SORNA") ........ 13
B. International Megan's Law ("IML") ........ 14
C. IML's passport identifier provision ........ 14
IV. Plaintiff's Ex Post Facto Claim Should Be Dismissed for Failure to State a Claim (Count One) ........ 15
V. Plaintiff's Eighth Amendment Claim Should Be Dismissed for Failure to State a Claim (Count Two) ........ 19
VI. Plaintiff's First Amendment Claim Should Be Dismissed for Failure to State a Claim (Count Three) ........ 20
A. Overview of applicable law ........ 20
B. Discussion ........ 22
VII. Plaintiff's Substantive Due Process Claim Should Be Dismissed for Failure to State a Claim (Count Four) ........ 25
A. Applicable law ........ 25
B. Plaintiff has not alleged the deprivation of a liberty or property interest ........ 27
1. "[F]reedom to travel internationally without stigma" ........ 28
2. "[A]bility to control personal information about himself" ........ 31
3. "[B]usiness and economic interests requiring international travel" ........ 31
4. "[L]iberty interest in reputation and freedom from government-imposed shame" ........ 33
C. IML's passport identifier requirement is rationally related to legitimate governmental interests ........ 33
VIII. Plaintiff's Procedural Due Process Claim Should Be Dismissed for Failure to State a Claim (Count Five) ........ 35
A. Applicable law ........ 35
B. Discussion ........ 35
IX. Plaintiff's Breach of Contract Claim Should Be Dismissed for Failure Lack of

Jurisdiction or, Alternatively, for Failure to State a Claim (Count Six)....................37
X. Plaintiff's "Right" to International Travel Claim Should Be Dismissed for Failure to State a Claim (Count Seven)..............................................................38
XI. Plaintiff's Request for a Temporary Restraining Order and Preliminary Injunction Should Be Denied.......................................................................38
XII. Leave to Amend Should Be Denied ........................................................................40
Conclusion ..........................................................................................................42

## Introduction

Defendants Marco Rubio, Secretary of State; Kristi Noem, Secretary of Homeland Security; Pamela Bondi, Attorney General of the United States; and the United States of America (collectively, "Defendants") respectfully move to dismiss Plaintiff's "Original Complaint for Declaratory and Injunctive Relief and Emergency Motion for Temporary Restraining Order" (the "Complaint" or "Comp.") (ECF No. 1), pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Defendants also move to dismiss Plaintiff's breach of contract claim pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction.

Plaintiff, appearing *pro se*, has brought this action challenging the Department of State's placement of a sex-offender identifier in his U.S. passport pursuant to the International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders ("IML").[2] As Plaintiff acknowledges in his Complaint, he pled guilty to aggravated sexual assault of a child under a deferred adjudication agreement with the State of Texas. Comp. ¶¶ 11, 92. Plaintiff also concedes that he is "subject to the passport marking requirement" even though he pled guilty prior to IML's enactment and even though his case was dismissed after he successfully completed his period of deferred adjudication. *Id.* ¶ 31; *see also id.* ¶¶ 22-23.

Plaintiff challenges IML's passport identifier requirement based upon alleged constitutional violations (Counts One through Five and Seven), and alleged breach of contract (Count Six). As discussed below, Plaintiff's constitutional claims should be dismissed for failure

---

[2] Pub. L. No. 114-119, 130 Stat. 15 (2016) (codified in part at 34 U.S.C. § 21501 *et seq.* and 22 U.S.C. § 212b).

to state a claim. Plaintiff's breach of contract claim should be dismissed for lack of jurisdiction or, in the alternative, for failure to state a claim.

**Procedural History**

**A. Complaint**

Plaintiff filed his Complaint on July 14, 2025. ECF No. 1. The Complaint alleges constitutional violations based upon the Ex Post Facto Clause (Count One), the Eighth Amendment (Count Two), the First Amendment (Count Three), substantive due process (Count Four), procedural due process (Count Five), and the "right" to international travel (Count Seven). The Complaint alleges breach of contract based upon Plaintiff's plea agreement with the State of Texas (Count Six).

The Complaint also includes a request for a temporary restraining order ("TRO") and preliminary injunction ("PI"). Comp. ¶¶ 103-13. Plaintiff has not separately filed a motion for injunctive relief.

On July 18, 2025, the U.S. Attorney's Office for the Western District of Texas was served with a copy of the Complaint and summons. This Honorable Court granted Defendants' motion for a two-week extension, until September 30, 2025, of their deadline to answer, plead, or otherwise respond to the Complaint.[3]

**B. Factual allegations in the Complaint**

In support of his claims, Plaintiff alleges, in substance and in part, the following.

---

[3] Defendants do not waive any defenses they may have regarding service of process.

**1. Plaintiff's guilty plea and deferred adjudication**

Plaintiff is a resident of El Paso, Texas who, in 2004, pled guilty to aggravated sexual assault of a child under a deferred adjudication agreement with the State of Texas. Comp. ¶¶ 11, 92.

Plaintiff received ten years of deferred adjudication community supervision. *Id.* ¶ 20. He successfully completed the terms of his deferred adjudication and, in August 2016, the proceedings against him were dismissed. *Id.* ¶¶ 11, 22-23. Plaintiff states that "this dismissal means [he] does not have a final conviction for state law purposes." *Id.* ¶ 24.

Plaintiff further states that, during plea negotiations and at his plea colloquy, he was not informed about potential future federal consequences, including passport marking requirements, because IML had not been enacted. *Id.* ¶¶ 17-18, 26. IML was not signed into law until February 2016. *Id.* ¶ 25.

Plaintiff is "simultaneously challenging the validity of his underlying 2004 conviction through state habeas corpus proceedings . . . ." *Id.* ¶ 5; *see also id.* ¶ 46.

**2. Sex-offender identifier in Plaintiff's passport**

Plaintiff acknowledges that IML requires that passports issued to "covered sex offenders" bear a "unique identifier" indicating that the individual is a covered sex offender. *Id.* ¶ 28; *see also* IML, § 8(a) (codified at 22 U.S.C. § 212b); 22 U.S.C. § 212b(b)(1), (c)(1)-(2).

He also recognizes that a "covered sex offender" includes an individual who is required to register under the Sex Offender Registration and Notification Act ("SORNA")[4] for an offense against a minor. Comp. ¶ 29; *see also* 22 U.S.C. § 212b(c)(1) (defining "covered sex offender" as

[4] Pub. L. No. 109-248, Title I, 120 Stat. 590 (2006) (codified in part at 34 U.S.C. § 20901 *et seq.*).

an individual who is a "sex offender" under IML, § 4(f), codified at 34 U.S.C. § 21503(f), and who is currently required to register under the sex offender registration program of any jurisdiction); 34 U.S.C. § 21503(f)(2) (defining "sex offender" to include an individual who is required to register under the sex offender registration program of any jurisdiction or who is included in the National Sex Offender Registry, on the basis of an offense against a minor).

Plaintiff does not dispute that individuals who receive deferred adjudication for sex offenses are required to register even if their case is subsequently dismissed. *See* Comp. ¶ 30.[5]

Plaintiff acknowledges that he "is therefore subject to the passport marking requirement despite the dismissal of his case and despite the fact that such requirement did not exist when he entered his plea." *Id.* ¶ 31.

Plaintiff has obtained a passport bearing the "marking required by [IML]." *Id.* ¶ 34.

---

[5] SORNA requires that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 34 U.S.C. § 20913(a).

The Texas Sex Offender Registration Program is codified at Chapter 62 of the Texas Code of Criminal Procedure. Under Chapter 62, a person with a "reportable conviction or adjudication, other than an adjudication of delinquent conduct," for a "sexually violent offense," has a lifetime duty to register. *See* Tex. Code Crim. P. Ann. art. 62.101(a)(1). The term "reportable conviction or adjudication" includes deferred adjudication. *See id.* art. 62.001(5)(A). The term "sexually violent offense" includes an offense under Tex. Penal Code Ann. § 22.021 (aggravated sexual assault) committed by a person 17 years or older. *See* Tex. Code Crim. P. Ann. art. 62.001(6)(A). The reporting obligations continue even for an individual whose case is dismissed following successful completion of deferred adjudication. *See, e.g.*, *City of El Paso v. R.K.*, No. 08-24-00144-CV, 2025 WL 2023066, at *1 (Tex. App. 8th July 18, 2025) ("Chapter 62 currently provides that a guilty plea to sexual assault of a child is a 'reportable conviction' for which the defendant must register as a sex offender regardless of whether the case is dismissed following a deferred adjudication order.") (citations omitted); *McCraw v. C.I.*, 525 S.W.3d 701, 705 (Tex. App. 9th 2017) ("[S]uccessful completion of deferred adjudication for particular offenses does not relieve an offender of a duty to register under the [Texas sex offender registration program]."); *see also King v. McCraw*, 559 F. App'x 278, 282 n.2 (5th Cir. 2014) (per curiam) (noting that "the 2005 amendments to [Texas's Sex Offender Registration Act] require people with a conviction or a deferred adjudication to register as a sex offender," and that the plaintiff, whose proceedings were dismissed after deferred adjudication, was required to register due to the fact that he received a deferred adjudication).

**3. Plaintiff's allegations of "imminent harm"**

Plaintiff claims that disclosure of the passport identifier will result in the loss of overseas investments and future business opportunities. *Id.* ¶ 38. He alleges that he "has significant business investments in Dubai, United Arab Emirates, valued at $180,000" *id.* ¶ 32 and that his "business interests require him to travel internationally, including to countries that may deny entry to individuals with passport markings indicating sex offense convictions," *id.* ¶ 33.

He alleges that he was scheduled to travel to Dubai on the Sunday after he filed his Complaint (July 20, 2025), and that during this trip, he would be required to "present his marked passport multiple times to foreign immigration authorities, hotel personnel, business partners, and other third parties, forcing repeated disclosure of the stigmatizing government message." *Id.* ¶¶ 35-36.

Plaintiff further alleges that "[w]ithin the next two months" (August and September 2025), he "must upload his passport information to an online portal shared with his international business partners in Dubai," and that "[t]he disclosure of the passport marking to his business partners will immediately and irreparably destroy these established business relationships, resulting in the loss of his $180,000 investment and future business opportunities." *Id.* ¶¶ 37-38.

Plaintiff does not allege the identity of his business investments, his business partners, or any countries he must to travel to that *will* deny him access.

**Arguments and Authorities**

**I. Legal Standards**

**A. Fed. R. Civ. P. 12(b)(1)**

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v.*

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A federal court properly dismisses a case for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *E.g.*, *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307 (5th Cir. 2021) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge the subject matter jurisdiction of the federal district court. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction must be considered before any other challenges because a court must have subject matter jurisdiction before determining a claim's validity. *E.g.*, *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (citation omitted).

"'[T]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction,' so 'the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.'" *Shemwell v. City of McKinney*, 63 F.4th 480, 483 (5th Cir. 2023) (per curiam) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)).

"Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161 (citation omitted).

**B. Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, "the court must accept all well-pleaded facts as true and view them in the light

most favorable to the plaintiff." *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) (citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992)).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Further, although the pleading standard under Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**C. *Pro se* pleadings**

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted). "But even for *pro se* plaintiffs, . . . 'conclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice' to state a claim for relief." *Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307, 308 (5th Cir. 2017) (per curiam) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

**D. As-applied versus facial challenges to a statute**

As explained below, Plaintiff does not properly raise any facial challenges to IML's passport identifier requirement. Instead, Plaintiff makes as-applied challenges.

The Supreme Court has cautioned that facial challenges to a statute "often rest on speculation about the law's coverage and its future enforcement" and "threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (cleaned up). The Supreme Court "has therefore made facial challenges hard to win." *Id.*; *see also Reed v. Goertz*, 136 F.4th 535, 542 (5th Cir. 2025) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully.") (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

For challenges not based upon the First Amendment, a plaintiff cannot sustain a facial attack "unless he establishes that no set of circumstances exists under which the law would be valid, or he shows that the law lacks a plainly legitimate sweep." *Moody*, 603 U.S. at 723 (cleaned up). For First Amendment cases, a lower but "still rigorous standard" applies. *Id.* (citation omitted). The question in First Amendment cases is "whether a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (cleaned up).

Here, Plaintiff makes as-applied challenges to IML's passport identifier requirement. He alleges, for example, that the passport identifier requirement violates various constitutional protections "*as applied to Plaintiff*, who completed deferred adjudication probation and had his

case dismissed in 2016—two months before [IML] was enacted." Comp. ¶ 3 (emphasis added).[6] He also alleges constitutional violations as-applied to him. *See id.* ¶ 61 (in Count One, alleging that "[a]pplication of the passport marking requirement *to Plaintiff* violates the Ex Post Facto Clauses") (emphasis added); *id.* ¶ 66 (in Count Two, alleging that "[t]he retroactive application of the passport marking requirement *to Plaintiff's* 2004 conduct . . . demonstrates the punitive nature of the scheme") (emphasis added); *id.* ¶ 73 (in Count Three, alleging that "[t]he passport marking requirement *compels Plaintiff* to carry and present a document containing stigmatizing speech . . . that he would not otherwise choose to convey") (emphasis added); *id.* ¶ 87 (in Count Five, alleging that "[t]he passport marking requirement *deprives Plaintiff* of liberty and property interests") (emphasis added); *id.* ¶ 100 (in Count Seven, alleging that the "[t]he passport marking requirement substantially *burdens Plaintiff's right* to international travel") (emphasis added).

Further, the Complaint should not be construed as making facial challenges to IML's passport identifier requirement. While Plaintiff also alleges, in conclusory terms, that he is seeking relief for "others similarly situated," *id.* ¶ 6, and asks for a declaration that IML's passport identifier requirement is unconstitutional "as applied to Plaintiff and others whose conduct occurred before the law's enactment," *id.* at p. 19, the crux of Plaintiff's claims is that the passport identifier requirement is unconstitutional as applied to him.

In addition, for his non-First Amendment claims, he does not appear to contend that "no set of circumstances exists under which the law would be valid, or . . . that the law lacks a plainly legitimate sweep," *Moody*, 603 U.S. at 723 (cleaned up). And, for his First Amendment claim, he

[6] Elsewhere in the Complaint, Plaintiff alleges that the proceedings against him were dismissed in August 2016, approximately six months after IML's enactment. *See* Comp. ¶¶ 23, 25. The timing of his dismissal relative to IML's enactment is not relevant to this motion.

does not contend that "a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," *id.* (cleaned up).

Moreover, even if this Court were to construe the Complaint as raising facial challenges, any such challenges would necessarily fail for the same reasons that Plaintiff's as-applied challenges fail. *Cf. United States v. Diaz*, 116 F.4th 458, 471-72 (5th Cir. 2024) (where defendant alleged that a statute violated the Second Amendment both facially and as applied to him, he could not sustain the facial attack "because the statute is constitutional as applied to the facts of his own case") (citation omitted).

Accordingly, the Complaint does not properly raise any facial challenges to IML's passport identifier requirement and should be construed as making as-applied challenges only.

## II. Jurisdiction

### A. Applicable Law

It is well settled that the United States, as a sovereign entity, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)); *accord United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("[T]he 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'") (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Thus, suit against the United States can only be entertained when Congress has specifically waived the United States' immunity. *See, e.g.*, *Lehman,* 453 U.S. at 160. Such waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Franconia Assocs. v. United States*, 536

U.S. 129, 141 (2002) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

A limited waiver of sovereign immunity appears in the Administrative Procedure Act ("APA"). The APA sets forth the procedures by which agency actions are subject to review by the courts. The provisions for judicial review are contained in 5 U.S.C. §§ 701-706. Section 702 creates a cause of action, entitling "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," to judicial review of the agency action. 5 U.S.C. § 702. This section provides a limited waiver of sovereign immunity from "[a]n action . . . seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority . . . ." *Id.*

The right to judicial review in § 702 is subject to several significant exceptions. For example, "[o]nly '[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.'" *Flores v. Pompeo*, 936 F.3d 273, 277 (5th Cir. 2019) (quoting 5 U.S.C. § 704); *accord, e.g.*, *Sierra Club v. Peterson,* 228 F.3d 559, 565 (5th Cir. 2000) ("Absent a specific and final agency action, we lack jurisdiction to consider a challenge to agency conduct.") (citation omitted).

"Agency action is 'final' if two conditions are satisfied: 'First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Louisiana State v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 580-81 (5th Cir. 2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). "In evaluating whether a challenged agency action meets these two conditions, [the Fifth Circuit] is guided by the Supreme Court's interpretation of the APA's finality requirement as

'flexible' and 'pragmatic.'" *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149-50 (1967)).

Finally, "it is 'well settled that where a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute.'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir. 1980)).

**B. Discussion**

Plaintiff contends that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346 and 42 U.S.C. § 1983. Comp. ¶ 7. As set forth below, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702 to decide Plaintiff's as-applied constitutional claims, but not Plaintiff's breach of contract claim.

Section 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. While § 1331 confers subject matter jurisdiction on federal courts to hear constitutional claims, it does not contain a waiver of sovereign immunity. *See, e.g.*, *Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1385 (5th Cir. 1989). Defendants note that the Complaint does not cite the APA, but they acknowledge that the Court may determine that the limited waiver of sovereign immunity in 5 U.S.C. § 702 covers Plaintiff's as-applied challenges to IML's passport identifier requirement (Counts One through Five and Seven). *Cf. Maehr v. U.S. Dep't of State*, 5 F.4th 1100, 1106-07 (10th Cir. 2021) (in suit challenging State Department's revocation of a passport on constitutional grounds, § 1331 provided basis for subject matter jurisdiction and § 702 provided applicable waiver of sovereign immunity). However, as discussed in Part IX below, this Court does not have

jurisdiction over Plaintiff's breach of contract claim.[7]

Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702 to review Plaintiff's as-applied constitutional claims but not his breach of contract claims.

## III. Relevant Statutory Background

### A. The Sex Offender Registration and Notification Act ("SORNA")

In 2006, Congress enacted SORNA to establish a comprehensive national system for the registration of sex offenders. *See* 34 U.S.C. § 20901 (declaration of purpose). SORNA "ma[de] more uniform and effective the prior patchwork of sex-offender registration systems." *Gundy v. United States*, 588 U.S. 128, 132 (2019) (citation and internal quotation marks omitted). Prior to SORNA, "every State and the District of Columbia had enacted a sex-offender registration law," but "the state statutes varied along many dimensions, and Congress came to realize that their 'loopholes and deficiencies' had allowed . . . about 20% of the total . . . to escape registration." *Id.* (citation omitted).

SORNA requires that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 34 U.S.C. § 20913(a). SORNA also enacted 18 U.S.C. § 2250, which makes it a crime for a person who is required to register under the Act to knowingly fail to register or update a registration. *See* Pub. L. No. 109-248, § 141(a).

---

[7] None of the provisions in the other statutes cited by Plaintiff—28 U.S.C. § 1346 and 42 U.S.C. § 1983—confer jurisdiction on this Court to hear Plaintiff's claims. *See, e.g.*, *FDIC*, 510 U.S. at 478 (constitutional tort claims are not cognizable under 28 U.S.C. § 1346(b)); *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017) (noting that 42 U.S.C. § 1983 "entitles an injured person to money damages if a state official violates his or her constitutional rights," but that "Congress did not create an analogous statute for federal officials"); *Stokes v. United States*, 1:17-cv-115-RP, 2017 WL 11717525, at *3 (W.D. Tex. Dec. 11, 2017) ("28 U.S.C. § 1346(a)(2) does not confer jurisdiction to federal district courts over claims for equitable relief against the United States.").

SORNA also directed the Attorney General, in consultation with the Secretary of State and Secretary of Homeland Security, to "establish and maintain a system for informing the relevant jurisdictions about persons entering the United States who are required to register under [Title 34]." 34 U.S.C. § 20930. Further, it required the Attorney General to maintain a National Sex Offender Registry ("NSOR"), which includes information about all individuals required to register in a jurisdiction's sex offender registry. *Id*. § 20921(a). It also called for the establishment of a National Sex Offender Public Website that allows the public to obtain certain information for each offender. *Id*. § 20922. *See also* http://www.nsopw.gov.

**B. International Megan's Law ("IML")**

In 2016, Congress enacted IML with the aim of "protect[ing] children and others from sexual abuse and exploitation, including sex trafficking and sex tourism . . . ." IML, preamble.

IML amended SORNA to require sex offenders to provide certain information about their "intended travel . . . outside of the United States" in conformity with the Attorney General's directions about the time and manner for reporting such information. IML, § 6(a) (codified at 34 U.S.C. § 20914(c)).

IML also amended 18 U.S.C. § 2250 to cover and criminalize situations where an individual fails to provide notice relating to intended foreign travel as required by SORNA. IML, § 6(b) (codified at 18 U.S.C. § 2250(b)). Under that law, sex offenders are required to report under SORNA whenever they travel internationally. *See id.*; *see also Nichols v. United States*, 578 U.S. 104, 112 (2016).

**C. IML's passport identifier provision**

IML directed the Secretary of Homeland Security to establish an "Angel Watch Center" within the Child Exploitation Investigations Unit of U.S. Immigration and Customs Enforcement.

IML, § 4(a) (codified at 34 U.S.C. § 21503(a)).

The Angel Watch Center is responsible for, among other things, determining whether "individuals traveling abroad are listed on the [NSOR]" or whether they meet the criteria for inclusion on the NSOR, and providing the United States Marshals Service ("USMS") with a list of such individuals to determine compliance with SORNA. 34 U.S.C. § 21503(e)(1).

IML also tasks the Angel Watch Center with "provid[ing] a written determination to the Department of State regarding the status of an individual as a covered sex offender . . . when appropriate." *Id.* § 21503(e)(5)(A).

Relevant here, IML prohibits the Secretary of State from issuing a passport to an individual identified by the Angel Watch Center as "a covered sex offender unless the passport contains a unique identifier." IML, § 8(a) (codified at 22 U.S.C. § 212b); *see* 22 U.S.C. § 212b(b)(1). The Secretary of State may also revoke a passport previously issued to such an individual if it does not contain such an identifier. 22 U.S.C. § 212b(b)(1).

For purposes of § 212b, the term "covered sex offender" means an individual who is a sex offender as defined in IML, § 4(f) (codified at 34 U.S.C. § 21503(f)), and who "is currently required to register under the sex offender registration program of any jurisdiction." 22 U.S.C. § 212b(c)(1).

The term "unique identifier" means "any visual designation affixed to a conspicuous location on the passport indicating that the individual is a covered sex offender." *Id.* § 212b(c)(2).

## IV. Plaintiff's Ex Post Facto Claim Should Be Dismissed for Failure to State a Claim (Count One)

Plaintiff alleges that IML's passport identifier requirement, which was not in effect at the time of his guilty plea, violates the Ex Post Facto Clause. Comp. ¶ 57. As set forth below, the Supreme Court and the Fifth Circuit have rejected ex post facto challenges to sex offender

registration and notification laws. Based upon this precedent, Plaintiff's ex post facto challenge to IML's passport identifier requirement is not plausible on its face and should be dismissed for failure to state a claim.

The federal Constitution prohibits both Congress and the States from enacting any "ex post facto Law." U.S. Const. art. I, § 9, cl. 3; U.S. Const. art. I, § 10, cl. 1. "Retroactive application of a law violates the Ex Post Facto Clause only if it: (1) 'punish[es] as a crime an act previously committed, which was innocent when done;' (2) 'make[s] more burdensome the punishment for a crime, after its commission;' or (3) 'deprive[s] one charged with crime of any defense available according to law at the time when the act was committed.'" *Jackson v. Vannoy*, 981 F.3d 408, 417 (5th Cir. 2020) (quoting *Collins v. Youngblood*, 497 U.S. 37, 52 (1990)).

"A statute can violate the *Ex Post Facto* Clause . . . only if the statute is punitive." *Does 1-7 v. Abbott*, 945 F.3d 307, 313 (5th Cir. 2019) (per curiam) (citation omitted). The Supreme Court and the Fifth Circuit have held that sex offender registration and notification requirements are nonpunitive and therefore do not violate the Ex Post Facto Clause. *See Smith v. Doe*, 538 U.S. 84, 105-06 (2003) (holding that retroactive application of Alaska's sex offender registration and notification law did not violate the Ex Post Facto Clause); *King*, 559 F. App'x at 281-82 (noting that the Fifth Circuit, in unpublished decisions, "has repeatedly affirmed a district court's dismissal as frivolous the claim that the retroactive application of Texas law requiring sex offender registration and notification violates the *Ex Post Facto* Clause") (collecting cases); *United States v. Young*, 585 F.3d 199, 204-06 (5th Cir. 2009) (per curiam) (holding that SORNA's registration requirement, as applied to an individual convicted prior to statute's enactment, did not violate the Ex Post Facto Clause).

In *Smith*, 538 U.S. at 92, the Supreme Court set out a two-part test to analyze ex post facto

claims. A court first asks whether the legislature intended to impose punishment, or instead intended "to enact a regulatory scheme that is civil and nonpunitive." *Id.* If the legislature intended punishment, "that ends the inquiry." *Id.* If, on the other hand, the legislature intended to enact a civil regulatory scheme, then the court assesses, using the factors noted in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), whether the scheme is "so punitive either in purpose or effect" that it should be deemed punishment despite the legislature's intent. *Smith*, 538 U.S. at 92, 97. "[O]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 92 (citation and internal quotation marks omitted).

With IML, Congress intended to enact a civil, nonpunitive regulatory scheme. In the Act's preamble, Congress stated that its legislative objective was "[t]o protect children and others from sexual abuse and exploitation, including sex trafficking and sex tourism." IML, preamble. Congress aimed to do so "by providing advance notice of intended travel by registered sex offenders outside the United States to the government of the country of destination, requesting foreign governments to notify the United States when a known sex offender is seeking to enter the United States, and for other purposes." *Id.* The face of the Act therefore reveals Congress's intent to create a civil regulatory scheme to protect the public from sexual abuse and exploitation by providing notice to other governments and requesting reciprocal notice. *Cf. Young*, 585 F.3d at 204-05 (finding that Congress intended to create a civil remedy with SORNA because Congress expressed its intent to "establish[] a comprehensive national system for the registration of [sex] offenders" in order "to protect the public from sex offenders and offenders against children")

(citation omitted).[8]

Turning to the second part of the *Smith* test, neither the purpose nor effect of IML negates Congress's intent to establish a civil regulatory scheme. "For sex registration statutes, the 'factors most relevant to [a court's] analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.'" *Young*, 585 F.3d at 206 (quoting *Smith*, 538 U.S. at 97).

These factors do not negate Congress's intent to create a civil regulatory scheme. Sex offender registration schemes have not been regarded in our country's history and traditions as punishment. *See, e.g.*, *Abbott*, 945 F.3d at 314 ("*Smith* suggests that sex-offender registry statutes are generally not punitive.") (citing *Smith*, 538 U.S. at 105); *Hayes v. Texas*, 370 F. App'x 508, 509 (5th Cir. 2010) (per curiam) ("Retroactive application of laws requiring sex-offender registration and notification do not violate the Ex Post Facto Clause.") (citation omitted). In addition, IML's passport identifier requirement does not impose a punitive disability or restraint. Instead, it constitutes a communication from the federal government to authorities in other countries of accurate information regarding an individual's criminal history. As the Supreme Court has recognized, "[o]ur system does not treat dissemination of truthful information in furtherance of a

---

[8] While § 6 of the IML amended a criminal statute, 18 U.S.C. § 2250, to provide criminal penalties for those who fail to provide notice of foreign travel, this provision does not negate Congress's intent to create a civil regulatory scheme. *Cf. Smith*, 538 U.S. at 95 (holding that "partial codification of [Alaska's sex offender registration law] in the State's criminal procedure code [wa]s not sufficient to support a conclusion that the legislative intent was punitive"); *United States v. Jones*, 842 F. App'x 878, 880 n.1 (5th Cir. 2021) (per curiam) ("While failing to comply with SORNA can result in criminal penalties, SORNA itself is not a criminal statute, but rather a 'civil regulation' that 'establishes a comprehensive national system for the registration of [sex] offenders.'") (quoting *Young*, 585 F.3d at 204).

legitimate governmental objective as punishment." *Smith*, 538 U.S. at 98. Finally, application of the passport identifier is rationally connected to a nonpunitive purpose—protecting children and the public from sexual abuse and exploitation—and it is not excessive in relation to that purpose. In sum, neither the purpose nor effect of IML negates Congress's intent to create a civil, nonpunitive regime.

Based upon the foregoing, IML is nonpunitive and Plaintiff's ex post facto claim is not plausible on its face. Count One of the Complaint should therefore be dismissed for failure to state a claim.

## V. Plaintiff's Eighth Amendment Claim Should Be Dismissed for Failure to State a Claim (Count Two)

Plaintiff further alleges that IML's passport identifier requirement violates the Eighth Amendment's prohibition against cruel and unusual punishment. Comp. ¶¶ 65-66. This claim is not plausible on its face because, as discussed in Part IV above, IML is nonpunitive. *See, e.g.*, *Abbott*, 945 F.3d at 313-15 (noting that a statute can violate the Ex Post Facto Clause or the Eighth Amendment "only if the statute is punitive," and affirming dismissal of ex post facto and Eighth Amendment claims challenging Texas's sex offender registration statute because it "is not punitive"); *Willman v. Att'y Gen. of United States*, 972 F.3d 819, 825 (6th Cir. 2020) (holding that plaintiff's cruel and unusual punishment claim challenging SORNA was not facially plausible because "SORNA is not a punishment for purposes of the Ex Post Facto Clause" and "[i]t follows, therefore, that SORNA is not punishment for purposes of the Eighth Amendment either"); *United States v. Diaz*, 967 F.3d 107, 111 (2d Cir. 2020) (rejecting Eighth Amendment challenge to SORNA because Second Circuit "precedent precludes the argument that sex offender registration and notification requirements are punitive").

Accordingly, Count Two of the Complaint should be dismissed for failure to state a claim.

## VI. Plaintiff's First Amendment Claim Should Be Dismissed for Failure to State a Claim (Count Three)

Count Three, which asserts that IML's passport identifier provision compels speech in violation of the First Amendment, also fails to state a claim for relief. The passport identifier does not implicate Plaintiff's First Amendment rights because it is government speech on government property that is not likely to be attributed to Plaintiff.

### A. Overview of applicable law

The Free Speech Clause of the First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (citations omitted).

In *Wooley*, the Supreme Court held that a State may not "require an individual to participate in the dissemination of an ideological message by displaying it on his private property in a manner and for the express purpose that it be observed and read by the public." *Id.* at 713. There, the State of New Hampshire imposed criminal sanctions against persons who covered the motto "Live Free or Die" on vehicle license plates. *Id.* at 706-07. The Court held that the statute implicated the plaintiffs' First Amendment rights because it "in effect require[d] that [persons] use their private property as a 'mobile billboard' for the State's ideological message . . . ." *Id.* at 715. The Court further held that there was no countervailing interest sufficiently compelling to justify the requirement and that the State, therefore, was not permitted to require plaintiffs to display the motto. *Id.* at 716-17.[9]

[9] The Supreme Court noted, in dicta, that the national motto "In God We Trust" on U.S. currency was not at issue before the Court, but that currency "differs in significant respects from an automobile." *Wooley*, 430 U.S. at 717 n.15. Currency, the Court observed, "is generally carried in a purse or pocket and need not be displayed to the public." *Id*.

The Free Speech Clause does not, however, "regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) (citations omitted). "When the government wishes to state an opinion, to speak for the community, to formulate policies, or to implement programs, it naturally chooses what to say and what not to say." *Shurtleff v. City of Boston*, 596 U.S. 243, 251 (2022) (citation omitted). "That must be true for government to work." *Id.*

In *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015), the Supreme Court held that Texas license plates were government speech and that a private party could not force Texas to include a Confederate battle flag on its specialty license plates. *Id.* at 210-14. In reaching its decision that license plates are government speech, the Supreme Court observed that Texas license plates are "essentially, government IDs," that "persons who observe designs on IDs routinely—and reasonably—interpret them as conveying some message on the [issuer's] behalf," and that Texas "maintains direct control over the messages conveyed on its specialty plates." *Id.* at 212-13 (citations and internal quotation marks omitted).

The *Walker* court cautioned, however, that its decision that license plates "are government speech does not mean that the designs do not also implicate the free speech rights of private persons." *Id.* at 219. The Court recognized its prior decisions holding "that the First Amendment stringently limits a State's authority to compel a private party to express a view with which the private party disagrees." *Id.* (citations omitted).

"Whether speech is government speech or private speech requires 'a holistic inquiry designed to determine whether the government intends to speak for itself or to regulate private expression.'" *Book People, Inc. v. Wong*, 91 F.4th 318, 336-37 (5th Cir. 2024) (quoting *Shurtleff*, 596 U.S. at 252). "Three types of evidence 'guide the analysis': 'the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking;

and the extent to which the government has actively shaped or controlled the expression.'" *Id.* (quoting *Shurtleff*, 596 U.S. at 252). This "review is not mechanical; it is driven by a case's context rather than the rote application of rigid factors." *Id.* (quoting *Shurtleff*, 596 U.S. at 252).

If a statute implicates a person's First Amendment rights, the court must "determine whether the State's countervailing interest is sufficiently compelling to justify" the requirement. *Wooley*, 430 U.S. at 716 (citation omitted). And, "even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Id.* at 716 (citation omitted).

**B. Discussion**

As set forth below, this case does not implicate Plaintiff's First Amendment rights because the passport identifier is not compelled speech. Instead, the passport identifier is government speech on government property that is not likely to be attributed to Plaintiff.

*First*, a U.S. passport is a government-issued document. *See* 22 U.S.C. § 211a. Passports remain property of the United States even when held by individuals. *See* 22 C.F.R. § 51.7(a) ("A passport at all times remains the property of the United States and must be returned to the U.S. Government upon demand."); *id.* § 51.66 ("The bearer of a passport that is revoked . . . must surrender it to the Department or its authorized representative upon demand.").

*Second*, the U.S. government maintains direct control over the information published in a U.S. passport. *See id.* § 51.9 ("Except for the convenience of the U.S. Government, no passport may be amended."). Indeed, criminal penalties are imposed on individuals who mutilate or alter their passport. *See* 18 U.S.C. § 1543 (imposing criminal penalties on those who "mutilate[]" or "alter[] any passport"). Thus, "[t]o the extent that a passport communicates information, it does so on behalf of the issuing government, not the passport holder." *Doe v. Kerry*, Case No. 16-cv-0654-

PJH, 2016 WL 5339804, at *18 (N.D. Cal. Sept. 23, 2016).

*Third*, a passport does not function as a forum for private speech. "A passport is, in a sense, a letter of introduction in which the issuing sovereign vouches for the bearer and requests other sovereigns to aid the bearer." *Haig v. Agee*, 453 U.S. 280, 292 (1981) (citation omitted).

*Fourth*, the passport identifier cannot reasonably be interpreted as speech by Plaintiff. As noted above, a passport is property of the U.S. Government, and the information published in a passport is controlled by the U.S. Government. Further, the nature of the information in the IML identifier, which concerns Plaintiff's criminal offense, is not likely to be considered speech by Plaintiff.

Finally, this case is distinguishable from the license plate at issue in *Wooley*. Plaintiff is not being "force[d] . . ., as part of his daily life indeed constantly while his automobile is in public view to be an instrument for fostering public adherence to an ideological point of view he finds unacceptable," *Wooley*, 430 U.S. at 715. A passport is not private property and does not need to be advertised to the public. Further, the passport identifier does not "proselytize religious, political, and ideological causes," *id.* at 714, and Plaintiff is therefore not being asked to "foster[] public adherence to an ideological point of view he finds unacceptable," *id.* at 715. *See Kerry*, 2016 WL 5339804, at *18 (IML's passport identifier requirement did not implicate plaintiffs' First Amendment rights).

The Fifth Circuit's decision in *United States v. Arnold*, 740 F.3d 1032 (5th Cir. 2014) is instructive. There, the court affirmed denial of a petition for habeas corpus where petitioner argued that SORNA compels speech in violation of the First Amendment. In reaching its decision, the court noted that the petitioner had not argued that "SORNA either requires him (a) to affirm a religious, political, or ideological belief he disagrees with or (b) to be a moving billboard for a

governmental ideological message." *Id.* at 1035. The court further explained that "[w]hen the government, to protect the public, requires sex offenders to register their residence, it conducts an essential operation of the government, just as it does when it requires individuals to disclose information for tax collection." *Id.* (cleaned up).

If SORNA's requirement that sex offenders affirmatively register does not compel speech in violation of the First Amendment, it necessarily follows that a passport identifier—which is a communication by the U.S. Government to authorities in other countries—does not compel speech in violation of the First Amendment. *See Kerry*, 2016 WL 5339804, at *18 ("[T]he passport identifier required by the IML constitutes government speech and therefore the requirement does not implicate First Amendment interests.").

Even if this Court were to conclude that the passport identifier implicates Plaintiff's First Amendment rights, the Government has a compelling interest supporting IML's passport identifier provision. There can be no dispute that protecting children from sexual exploitation qualifies as a compelling interest. *See, e.g.*, *New York v. Ferber*, 458 U.S. 747, 757 (1982) ("The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."). In order to protect the public from sex trafficking and sex tourism, Congress established a scheme of notifying foreign countries concerning travel by a registered sex offender whose offense involved a child victim, and requesting reciprocal information from foreign governments. IML, §§ 4(e) & 7; *see also* 162 Cong. Rec. H 387 (daily ed. Feb. 1, 2016) (statement of New Jersey Rep. Smith that the purpose of the passport identifier is "[t]o prevent offenders from thwarting [IML] notification procedures by country hopping to an alternative destination not previously disclosed"). Including an identifier in a passport is a narrowly tailored means to that end—certainly less restrictive than refusing to issue a passport to such individuals or advising

foreign countries not to admit them.

Accordingly, IML's passport identifier requirement does not implicate Plaintiff's First Amendment rights and he has not stated a facially plausible First Amendment claim. Count Three should therefore be dismissed for failure to state a claim.

## VII. Plaintiff's Substantive Due Process Claim Should Be Dismissed for Failure to State a Claim (Count Four)

Count Four, which challenges the passport identifier requirement on substantive due process grounds, also fails to state a claim for relief. As explained below, Plaintiff has not alleged the deprivation of a protected liberty or property interest, let alone a fundamental right. Even if Plaintiff had alleged such a deprivation, the passport identifier requirement readily withstands review.

### A. Applicable law

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

Under Supreme Court precedent, the Due Process Clause "include[s] a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301-02 (1993) (emphasis in original) (citations omitted); *accord, e.g.*, *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024).

The "fundamental rights and liberty interests" protected by the Due Process Clause include the specific freedoms protected by the Bill of Rights plus a limited number of unenumerated liberty interests such as the right to marry and the right to have children. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citations omitted). The Supreme Court has cautioned that "[i]dentifying unenumerated rights" for substantive due process purposes "carries a serious risk of judicial

overreach." *Muñoz*, 602 U.S. at 910. Thus, the Supreme Court "exercise[s] the utmost care whenever [it is] asked to break new ground in this field," and it is "reluctant to expand the concept of substantive due process . . . ." *Glucksberg*, 521 U.S. at 720 (citations omitted).

Courts follow *Glucksberg*'s two-step inquiry to determine whether an unenumerated right is fundamental. *See, e.g.*, *Muñoz*, 602 U.S. at 910. First, the asserted right must be "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Glucksberg*, 521 U.S. at 720-21 (internal citations and quotation marks omitted). Second, *Glucksberg* requires a "careful description of the asserted fundamental liberty interest." *Id.* at 721 (citations and internal quotation marks omitted).

When a fundamental right is at stake, courts apply strict scrutiny. *Franklin v. United States*, 49 F.4th 429, 435 (5th Cir. 2022). "To survive strict scrutiny, a governmental restriction of a fundamental right must be 'narrowly tailored to serve a compelling state interest.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 721); *accord, e.g.*, *Flores*, 507 U.S. at 301-02.

On the other hand, if a fundamental right is not implicated by government action, rational-basis review is the appropriate standard. *E.g.*, *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 300-01 (2022); *see also Reyes v. N. Tex. Tollway Auth.*, 861 F.3d 558, 561 (5th Cir. 2017) (rational basis review is "the default for substantive due process claims that do not implicate a fundamental right"). Under that standard, a law "is entitled to a strong presumption of validity" and "must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Dobbs*, 597 U.S. at 301 (citations and internal quotation marks omitted).

**B. Plaintiff has not alleged the deprivation of a liberty or property interest**

Plaintiff has not alleged the deprivation of a liberty or property interest, let alone the deprivation of a fundamental right.

As an initial matter, Plaintiff has not identified a fundamental right allegedly infringed upon by IML's passport identifier requirement. As best Defendant can discern, the liberty interest that Plaintiff is alleging in Count Four is freedom "from arbitrary and irrational government action." *See* Comp. ¶ 80. This description is overly broad and conclusory and does not satisfy *Glucksberg*'s requirement that the asserted fundamental right be "careful[ly] descri[bed]" and "deeply rooted in this Nation's history and tradition," 521 U.S. at 720-21.

Count Four also fails to allege the deprivation of any nonfundamental liberty or property interests. At bottom, Plaintiff seeks to prevent the federal government from communicating with foreign authorities in other countries about his criminal history. He has not identified any liberty or property interest that entitles him to do so. *See, e.g.*, *Kerry*, 2016 WL 5339804, at *22 (plaintiffs challenging IML's passport identifier provision failed to state a substantive due process claim because they "alleged no facts sufficient to show a liberty interest in preventing U.S. authorities from transmitting accurate information about individuals' criminal histories to parallel authorities in countries where these individuals plan to travel").

Finally, although not listed in Count Four, Plaintiff alleges four interests in his procedural due process claim in Count Five. *See* Comp. ¶ 87. To the extent that the Court construes the Complaint to assert a substantive due process claim based upon those alleged interests, Plaintiff has also failed to state a claim. As set forth below, none of these alleged interests is a fundamental right. Moreover, Plaintiff has not alleged a deprivation of any of these alleged interests.

### 1. "[F]reedom to travel internationally without stigma"

Plaintiff contends that he has a liberty interest in the "freedom to travel internationally without stigma." *See* Comp. ¶ 87. As discussed below, the freedom to travel internationally is not a fundamental right. Further, Plaintiff has not alleged a deprivation of this freedom because the passport identifier does not restrict his travel. Finally, to the extent that Plaintiff is alleging an interest in being free from a government-inflicted "stigma," he has failed to state a claim because the information in the passport identifier is not false.

As an initial matter, the freedom "to travel internationally is not fundamental." *Franklin*, 49 F.4th at 437. While "[t]he constitutional right of interstate travel is virtually unqualified," "the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment." *Id.* (quoting *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978)). In *Franklin*, the Fifth Circuit held that the freedom to travel internationally is not a fundamental right and, therefore, that "restrictions on international travel . . . are not to be judged under strict scrutiny." *Id.*

Moreover, Plaintiff has not alleged a *deprivation* of the freedom to travel internationally because the passport identifier does not prevent him from traveling; instead, it merely provides notice to other countries of his status. *See Kerry*, 2016 WL 5339804, at *22 (plaintiffs "alleged no facts sufficient to show a liberty interest in preventing U.S. authorities from transmitting accurate information about individuals' criminal histories to parallel authorities in countries where these individuals plan to travel"); *cf. United States v. Byrd*, 419 F. App'x 485, 492-93 (5th Cir. 2011) (per curiam) (holding that SORNA's registration requirements do not implicate the fundamental right to interstate travel of convicted sex offenders because nothing in SORNA places a restriction on an offender's movement from state to state); *Ghedi v. Mayorkas*, 16 F.4th 456, 466-67 (5th Cir.

2021) (where plaintiff alleged procedural due process violation based upon Government-caused inconveniences during international travel, he failed to state a claim because he did not plausibly plead "some *deprivation*"; noting that plaintiff "ha[d] no right to hassle free travel" and that he "never allege[d] that he was prevented from ultimately getting to his final destination") (emphasis in original).

While Plaintiff alleges, in conclusory terms, that countries "may deny entry to individuals with passport markings indicating sex offense convictions," Comp. ¶ 33, *see also id.* ¶ 36, this is not a deprivation caused by Defendants or the passport identifier. Instead, it is a decision by sovereign countries based upon Plaintiff's criminal record. *Cf. Lien v. Ferguson*, No. C23-5522-TSZ-SKV, 2023 WL 8881177, at *4 (W.D. Wash. Oct. 12, 2023) (Magis. Ct.) ("The requirements imposed by § 212b do not prohibit Petitioner from traveling nor do they mandate that he obtain approval prior to travel. The fact that individual countries may deny Petitioner entry based upon his status as a registered sex offender is not a function of Washington's sex offender registration law or of Petitioner's underlying judgment and sentence, it is a function of individual countries exercising their sovereign authority to determine the conditions of entry."), *R. & R. adopted by* 2023 WL 8879123 (W.D. Wash. Dec. 22, 2023).

Plaintiff has therefore failed to allege that IML's passport identifier has deprived him of the freedom to travel internationally.

To the extent that Plaintiff is claiming an interest in traveling "without stigma," he has also failed to state a claim under the two-part stigma plus infringement test. *See, e.g.*, *Ghedi*, 16 F.4th at 467; *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1215 (5th Cir. 1989).

It is well-established that "the infliction of a stigma on a person's reputation by a state official, without more, does not infringe upon a protected liberty interest." *Ghedi*, 16 F.4th at 467

(quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995)). Because "reputation alone is not a protected liberty interest," a plaintiff "must show a stigma *plus* an infringement of some other interest." *Connelly*, 876 F.2d at 1215 (emphasis in original) (citation omitted).

"In order for a statement to be sufficiently stigmatizing to satisfy the first prong of the test, the statement must be both false and assert some serious wrongdoing on the part of the plaintiff." *Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996) (citations omitted). The Fifth Circuit has "found sufficient stigma only where a state actor has made concrete, *false* assertions of *wrongdoing on the part of the plaintiff*." *Blackburn*, 42 F.3d at 936 (emphasis in original) (citing *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991)). "When a sex offender is required to register or is assigned a risk level, there is no false assertion of fact, and thus there is no stigma." *Abbott*, 945 F.3d at 313 (citation omitted).

For the second part of the stigma plus test, "[t]he plus prong must be satisfied by a change in a right or status previously recognized by . . . law, not simply damage that flows from injury caused by the defendant to a plaintiff's reputation." *Kovac v. Wray*, 363 F. Supp. 3d 721, 755 (N.D. Tex. 2019) (internal citations and quotation marks omitted).

Plaintiff has not plausibly alleged stigma plus infringement. First, Plaintiff has not alleged that the information in the passport identifier is false. Second, Plaintiff has not alleged the infringement of a protected liberty or property interest. The passport identifier does not prevent Plaintiff from travelling—it merely provides notice to foreign governments.

In sum, Plaintiff has not alleged the deprivation of a protected liberty or property interest, let alone a fundamental right, based upon his assertion of a "freedom to travel internationally without stigma," Comp. ¶ 87. He has therefore failed to plausibly state a substantive due process claim under this theory.

**2. "[A]bility to control personal information about himself"**

Plaintiff next alleges an infringement of his "ability to control personal information about himself." Comp. ¶ 87. However, Plaintiff does not have a right to control the federal government's communications with foreign governments about the criminal records of international travelers. *See, e.g.*, *Kerry*, 2016 WL 5339804, at *22 (plaintiffs challenging IML's passport identifier provision failed to state a substantive due process claim because they "alleged no facts sufficient to show a liberty interest in preventing U.S. authorities from transmitting accurate information about individuals' criminal histories to parallel authorities in countries where these individuals plan to travel").

Further, Plaintiff's assertion of an "ability to control personal information about himself" is, at bottom, a recharacterization of his reputational claim. As discussed in Part VII.B.1 above, Plaintiff has failed to state a plausible due process claim under the stigma-plus test.

Accordingly, Plaintiff has failed to allege the deprivation of a liberty or property interest based upon his assertion of an "ability to control personal information about himself," Comp. ¶ 87. He has therefore failed to plausibly state a substantive due process claim under this theory.

**3. "[B]usiness and economic interests requiring international travel"**

Plaintiff further alleges that the passport identifier infringes upon "business and economic interests requiring international travel." Comp. ¶ 87.

Plaintiff's allegation regarding "business and economic interests" is essentially a recharacterization of his reputational claim, which fails the stigma-plus test for the reasons discussed in Part VII.B.1 above.

Moreover, Plaintiff's allegations regarding "business and economic interests" do not satisfy the "infringement" part of the stigma-plus test. "[F]or the infringement component,

'[n]either harm to reputation nor the consequent impairment of future employment opportunities are constitutionally cognizable injuries.'" *Abbott*, 945 F.3d at 313 (quoting *Vander Zee*, 73 F.3d at 1369). According to Plaintiff's allegations, the alleged harm to his business and economic interests flows from the harm to his reputation. He has therefore not plausibly alleged the infringement prong. *Cf. id.* (where plaintiffs alleged a procedural due process claim based upon Texas's sex offender registration statute, they failed to allege the infringement component of the stigma-plus-infringement test because they "identif[ied] no direct infringement on the part of the state, but only secondary harms resulting from their placement on the registry, such as housing and lending hardships"); *Vander Zee*, 73 F.3d at 1370 (plaintiff failed to allege infringement prong of stigma-plus test where the alleged impairment—his ability to obtain other employment—was "the result of harm to his reputation rather than a result of any direct restrictions placed upon him by" the defendants).

Further, Plaintiff's allegations about economic harm are conclusory and speculative. He alleges that the disclosure of his passport to "business partners" will "immediately and irreparably destroy" his "business relationships" and result in the loss of a "$180,000 investment" and "future business opportunities." Comp. ¶ 38. But these threadbare allegations do not show harm to a protected liberty or property interest.

Finally, Plaintiff has not plausibly alleged a causal connection between the passport identifier and any alleged harm. The passport identifier merely provides notice to foreign governments of Plaintiff's criminal offense. The only reasonable inference that can be drawn from Plaintiff's allegations is that any alleged economic harm is the result of his criminal offense, not the passport identifier.

Accordingly, Plaintiff has failed to allege a deprivation of a liberty or property interest, based upon his assertion of "business and economic interests requiring international travel," Comp. ¶ 87. He has therefore failed to plausibly state a substantive due process claim under this theory.

#### 4. "[L]iberty interest in reputation and freedom from government-imposed shame"

Plaintiff's due process claim based upon reputation and shame fails for the reasons discussed above. He has not plausibly alleged stigma plus infringement.

Based upon the foregoing, Plaintiff has failed to allege the deprivation of a protected liberty or property interest and, therefore, he has failed to state a substantive due process claim.

### C. IML's passport identifier requirement is rationally related to legitimate governmental interests

Because Plaintiff has not plausibly alleged a deprivation of a protected liberty or property interest, this Court does not need to reach the separate question of whether the passport identifier requirement survives rational-basis or intermediate review. But even if Plaintiff had successfully alleged a deprivation, IML's passport identifier requirement would readily withstand review.

If a fundamental right is not implicated by government action, rational-basis review is the appropriate standard. *E.g.*, *Dobbs*, 597 U.S. at 300. In *Franklin*, the Fifth Circuit declined to resolve whether restrictions that deprive an individual of the ability to travel internationally should be judged under rational-basis review or intermediate scrutiny. 49 F.4th at 437. "Intermediate scrutiny requires that the challenged restriction must serve important governmental objectives and must be substantially related to achievement of those objectives." *Id.* (citation and internal quotation marks omitted).

Defendants maintain that rational basis review applies. *See Dobbs*, 597 U.S. at 300. As noted above, a law survives rational basis review "if there is a rational basis on which the

legislature could have thought that it would serve legitimate state interests." *Id.* at 301 (citations omitted). IML's passport identifier provision easily survives rational-basis review. Congress could have rationally concluded that notifying authorities in a destination country, through a passport identifier, that a registered sex offender intends to travel there would protect children and others in those countries from sexual abuse and exploitation, facilitate cooperation with other countries in preventing such abuse, raise awareness of the whereabouts of registered sex offenders who cross international borders, and encourage reciprocal notifications from other countries about sex offenders who intend to travel here.

But even if this Court were to apply intermediate scrutiny, the passport identifier requirement would readily withstand this higher level of scrutiny. There can be no dispute that the passport identifier serves important governmental objectives. IML was enacted "to protect children and others from sexual abuse and exploitation, including sex trafficking and sex tourism, by providing advance notice of intended travel by registered sex offenders outside the United States to the government of the country of destination." IML, preamble. Protecting children and others from sexual abuse and exploitation is unquestionably an important governmental objective.

Further, IML's passport identifier requirement is clearly connected to this objective: notifying authorities in a foreign country that a registered sex offender intends to travel there serves to protect children and others in those countries from sexual abuse and exploitation, facilitates cooperation with other countries in preventing such abuse, raises awareness of the whereabouts of registered sex offenders who cross international borders, and encourages reciprocal notifications from other countries about sex offenders who intend to travel here. *See* IML, preamble; *id.* § 7 ("Reciprocal notifications").

Based upon the foregoing, Plaintiff has not alleged the deprivation of a liberty or property interest and, in any event, the passport identifier requirement withstands rational-basis review. Plaintiff has not pled a facially plausible substantive due process claim and Count Four should be dismissed for failure to state a claim.

## VIII. Plaintiff's Procedural Due Process Claim Should Be Dismissed for Failure to State a Claim (Count Five)

Count Five, which challenges the passport identifier requirement on procedural due process grounds, also fails to state a claim for relief. As set forth below, Plaintiff has not alleged the deprivation of a protected liberty or property interest.

### A. Applicable law

As discussed in Part VII above, the Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

Courts follow a two-step analysis to determine whether an individual's procedural due process rights have been violated. *E.g.*, *Nwaorie v. United States*, No. 19-20706, 2023 WL 3034261, at *7 (5th Cir. Apr. 21, 2023) (per curiam) (unpublished). "First, the court 'asks whether there exists a liberty or property interest which has been interfered with by the' Government action." *Id.* (quoting *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010)). "If so, 'the court examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id.* (quoting *Meza*, 607 F.3d at 399).

### B. Discussion

As discussed in Part VII, the Complaint fails to allege the deprivation of a protected liberty or property interest. Because Plaintiff has not alleged a deprivation of a protected liberty or property interest, this Court need not reach the question of whether the procedures were adequate.

*See, e.g.*, *Ghedi*, 16 F.4th at 466 n.43 ("Because [plaintiff] has failed to plausibly plead a deprivation, we do not reach the separate constitutional question: Whether the . . . procedures are constitutionally adequate.") (citation omitted).

Even if this Court were to conclude that Plaintiff has alleged a deprivation, Plaintiff has failed to plead that he is entitled to additional process to challenge the passport identifier. "When an individual is convicted of a sex offense, no further process is due before imposing sex offender conditions." *Meza*, 607 F.3d at 401 (citing *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7-8 (2003)); *accord, e.g.*, *Abbott*, 945 F.3d at 307 ("[I]t is settled that conviction or similar adjudication of a sex offense supplies sufficient due process for the imposition of sex offender conditions, including registration.") (citations omitted). As the Fifth Circuit has explained, a person "convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process." *Meza*, 607 F.3d at 401 (quoting *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997)). Thus, "when a registry's requirements 'turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest'—persons convicted of sexual offenses are owed no additional process." *Abbott*, 945 F.3d at 312 (first quoting *Conn. Dep't of Pub. Safety*, 538 U.S. at 7-8; and then citing *Meza*, 607 F.3d at 401).

Here, Plaintiff does not allege that the passport identifier is based upon any facts other than his deferred adjudication. *See* Comp. ¶¶ 30-31. Because Plaintiff has already received due process to contest his deferred adjudication, he is not entitled to any additional process concerning the passport identifier.

Based upon the foregoing, Plaintiff has failed to adequately plead a procedural due process violation and Count Five should be dismissed for failure to state a claim.

## IX. Plaintiff's Breach of Contract Claim Should Be Dismissed for Failure Lack of Jurisdiction or, Alternatively, for Failure to State a Claim (Count Six)

In Count Six, Plaintiff alleges breach of contract based upon his plea agreement with the State of Texas. Comp. ¶¶ 92, 96-97. He claims that the passport identifier requirement "violates the reasonable expectations of the parties at the time of the plea agreement" and "violates federal due process principles that protect the integrity of plea bargains and defendants' reasonable reliance on agreed-upon terms." *Id.* at ¶¶ 96-97. He has failed to state a claim for relief.

As an initial matter, this Court lacks jurisdiction to review Plaintiff's claim because the United States has not consented to be sued for an alleged breach of a contract to which it is not a party. *See, e.g.*, *United States v. Transocean Air Lines, Inc.*, 386 F.2d 79, 81 (5th Cir. 1967) ("The right to sue the United States cannot be granted by State law nor acquired through contractual relationships with third parties. The right can be acquired only by the specific consent of Congress . . . .") (citation omitted).

Alternatively, Plaintiff's breach of contract claim should be dismissed for failure to state a claim, as the United States was not a party to the plea agreement and is not subject to its terms. Courts apply "general principles of contract law in interpreting the terms of a plea agreement." *United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013) (citation omitted). "[A] party must show either privity or third-party-beneficiary status in order to have standing to sue for breach of contract." *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co*., 393 S.W.3d 379, 387 (Tex. App. 5th 2012) (citation omitted). "Privity exists if the defendant was a party to an enforceable contract with either the plaintiff or someone who assigned his or her cause of action to the plaintiff." *Id.* (citation omitted). Because Defendants are not party to the plea agreement, they are not subject to its terms.

Therefore, Count Six should be dismissed for failure lack of jurisdiction or, in the alternative, for failure to state a claim.

## X. Plaintiff's "Right" to International Travel Claim Should Be Dismissed for Failure to State a Claim (Count Seven)

Plaintiff's right to travel claim should be dismissed for failure to state a claim for the reasons set out in Part VII.B.1 above. In particular, Plaintiff has not alleged a deprivation of the freedom to travel internationally because the passport identifier does not prevent him from traveling; instead, it merely provides notice to other countries of his status.

Moreover, even if Plaintiff had alleged a deprivation of a protected liberty or property interest, IML's passport identifier requirement withstands constitutional review. Thus, Plaintiff's right to travel claim (Count Seven) should be dismissed for failure to state a claim.

## XI. Plaintiff's Request for a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") Should Be Denied

Finally, Plaintiff's request for a TRO and PI should also be denied. Plaintiff has not filed a motion for a TRO or PI but has instead set forth his request in his Complaint. He has thus not complied with Rule CV-65 of the Local Rules for the Western District of Texas, which states that "[a]n application for a temporary restraining order or preliminary injunction shall be made in an instrument separate from the complaint." Because no motion is before the Court, Plaintiff's request in his Complaint should not be considered. *E.g.*, *Victory Bus. Sols., Ltd. v. Lihaona, LLC*, No. SA-24-CV-00477-OLG, 2025 U.S. Dist. LEXIS 66287, at *2 n.1 (W.D. Tex. Mar. 31, 2025) (plaintiffs' request for TRO that was embedded in their complaint was "not properly before the Court and [would] not be considered").

Even if Plaintiff had properly moved for a TRO and/or PI, he would not be entitled to relief. "An injunction is an extraordinary remedy and should not issue except upon a clear showing of

possible irreparable injury." *Burk v. Jacobs*, Cause No. EP-25-CV-99-LS, 2025 WL 2212081, at *2 (W.D. Tex. Aug. 4, 2025) (quoting *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976)). "A party seeking a preliminary injunction or temporary restraining order must prove four elements: '(1) substantial likelihood of success on the merits; (2) substantial threat that plaintiff will suffer irreparable injury; (3) injury outweighs any harm the injunction might cause the defendant; and (4) injunction is in the public interest.'" *Id.* (quoting *Women's Med. Ctr. v. Bell*, 248 F.3d 411, 419 n.15 (5th Cir. 2001)).

Where, as here, a movant seeks a mandatory injunction, he must show "clear entitlement to the relief [he seeks] under the facts and the law." *Justin Indus., Inc. v. Choctaw Sec., L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990) (citation omitted); *see also, e.g.*, *Titlemax of Tex., Inc. v. City of Dallas*, 142 F.4th 322, 328 (5th Cir. 2025) ("[W]hen a plaintiff applies for a mandatory preliminary injunction, such relief should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party.") (citation and internal quotation marks omitted). Plaintiff seeks mandatory relief by asking the Court to order Defendants "to [i]mmediately issue Plaintiff a new standard United States passport without any sex offender markings or references to his dismissed 2004 case . . . ." Comp. at p. 19.

Plaintiff has not established any of the four elements required for injunctive relief, let alone "clear entitlement" to that relief. *First*, he has not shown a substantial likelihood of success on the merits. For the reasons discussed in Parts IV through X above, Plaintiff has not stated a plausible claim for any of the counts in his Complaint. *Second*, he has not established a substantial threat of irreparable injury. Instead, the Complaint makes threadbare and speculative allegations of economic harm. *See, e.g.*, Comp. ¶ 36 (alleging that foreign countries "*may* deny entry based upon the passport marking") (emphasis added); *id.* ¶ 38 (alleging in conclusory terms that the disclosure

of his passport to business partners will "irreparably destroy" business relationships and result in the loss of an investment and "future business opportunities," but failing to provide any information about the business partners, the business relationship, the investment, and the future business opportunities). He also fails to establish a causal connection between the passport identifier and the alleged harm. The only reasonable inference that can be drawn from Plaintiff's allegations is that any alleged economic harm is the result of his criminal offense, not the passport identifier.

Finally, he has not established the last two elements required for injunctive relief because the alleged injury does not outweigh the harm to Defendants, and an injunction is not in the public interest. The United States has a profound interest in implementing IML's passport identifier requirement. Notifying authorities in a foreign country that a registered sex offender intends to travel there serves to protect children and others in those countries from sexual abuse and exploitation, facilitates cooperation with other countries in preventing such abuse, raises awareness of the whereabouts of registered sex offenders who cross international borders, and encourages reciprocal notifications from other countries about sex offenders who intend to travel here.

Based upon the foregoing, Plaintiff's request for a TRO and PI should be denied.

## XII. Leave to Amend Should Be Denied

"Generally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam) (citing *Moawad v. Childs*, 673 F.2d 850, 851-52 (5th Cir. 1982)). But this rule is not absolute. "[I]f the protections afforded public officials are not to ring hollow, plaintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold." *Jacquez v. Procunier*, 801 F.2d

789, 792 (5th Cir. 1986).

Further, "a district court need not grant a futile motion to amend." *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000)). Leave to amend is also not required "if the plaintiff has already pleaded his 'best case.'" *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (quoting *Bazrowx*, 136 F.3d at 1054). "A plaintiff has pleaded her best case after she is 'apprised of the insufficiency' of her complaint." *Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Dark v. Potter*, 293 F. App'x 254, 257 (5th Cir. 2008)). "A plaintiff may indicate [he] has not pleaded [his] best case by stating material facts that [he] would include in an amended complaint to overcome the deficiencies identified by the court." *Id.* (citing *Brewster*, 587 F.3d at 767-68).

Defendants respectfully request that leave to amend be denied as futile.

*First*, Plaintiff will not be able to cure his Ex Post Facto and Eight Amendment claims (Counts One and Two), because IML is a civil, nonpunitive regulatory scheme.

*Second*, Plaintiff will not be able to cure his First Amendment claim (Count Three) because IML's passport identifier does not constitute compelled speech.

*Third*, Plaintiff will not be able to cure his due process claims (Counts Four and Five) because IML's passport identifier does not deprive him of a liberty or property interest. Plaintiff does not have a liberty interest in preventing U.S. authorities from transmitting accurate information about his criminal history to parallel authorities in foreign countries. To the extent that Plaintiff is alleging "stigma," his claim fails because the information in the passport identifier is not false.

*Fourth*, Plaintiff will not be able to cure the jurisdictional defect to his breach of contract claim (Count Six), because the United States has not consented to be sued for an alleged breach of a contract to which it is not a party.

*Finally*, Plaintiff will not be able to cure his right to travel claim (Count Seven) because the passport identifier does not prevent him from traveling; instead, it merely provides notice to other countries of his status.

Because any amendments to Plaintiff's claims would be futile, Defendants respectfully request that leave to amend be denied.

**Conclusion**

Based upon the foregoing, Defendants respectfully request that Plaintiff's as-applied challenges (Counts One through Five and Seven) be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Defendants also request that Plaintiff's breach of contract claim (Count Six) be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction or, in the alternative, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Defendants further request that dismissal be without leave to amend.

Respectfully submitted,

**JUSTIN R. SIMMONS**
**UNITED STATES ATTORNEY**

By: /s/ Anna E. Arreola

ANNA E. ARREOLA
Assistant United States Attorney
New York Registration No. 4151775
700 E. San Antonio, Ste. 200
El Paso, Texas 79901
Office: (915) 534-6555
Facsimile: (915) 534-3490
Email: Anna.Arreola@usdoj.gov
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2025, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF system.

In addition, that same day, I caused a copy of the document to be sent by both regular and certified mail, return receipt requested, to the following:[10]

Ramon Campbell
6005 Isabella Drive
El Paso, TX 79912
*Pro se Plaintiff*.

/s/ Anna E. Arreola
ANNA E. ARREOLA
Assistant United States Attorney

[10] Pursuant to Plaintiff's request, the undersigned Assistant U.S. Attorney will also email a courtesy copy to an email address that Plaintiff provided. Because Plaintiff is not a CM/ECF participant, the document is being formally served via U.S. mail.