FILED
2026 APR 13 AM 11: 38
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

RAMON CAMPBELL,
Plaintiff,

v. Civil Action No. 3:25-CV-00260-LS

MARCO RUBIO, in his official capacity as Secretary of State, *et al.*,
Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR INJUNCTION PENDING APPEAL PURSUANT TO FED. R. APP. P. 8(a)(1)**

Defendants' opposition rests on four contentions: (1) this Court's March 4, 2026 Order (Doc. 23) is not appealable under 28 U.S.C. § 1292(a)(1) because it concerns a TRO request; (2) an injunction pending appeal would give Plaintiff ultimate relief rather than preserve the status quo; (3) Plaintiff's evidence of irreparable harm is "conclusory and unsubstantiated"; and (4) Plaintiff's alleged harm flows from his underlying criminal offense, not the passport endorsement. Each contention fails.

## I. DOC. 23 IS APPEALABLE AS AN ORDER HAVING THE PRACTICAL EFFECT OF REFUSING INJUNCTIVE RELIEF.

Defendants' reliance on *In re Lieb*, 915 F.2d 180, 183 (5th Cir. 1990), is misplaced. *In re Lieb* stands only for the narrow proposition that "the denial of an application for a temporary restraining order is not appealable." That rule rests on the practical concern that a TRO expires by its own terms and will be moot long before an appeal can be resolved. Neither the rationale nor the rule reaches Doc. 23.

Doc. 23 is not a TRO denial. The Court acknowledged on the face of its order that "there is no separate motion for a temporary restraining order on the docket." (Doc. 23 at 1.) A court cannot deny a motion that was never filed. What Doc. 23 actually is—and what triggers appellate

jurisdiction—is a preemptive merits ruling that this Court "would therefore deny any motion for a [TRO] that is filed." (*Id.*) That language does not describe the denial of a pending motion; it announces a standing refusal of injunctive relief against any future motion. Unlike an ordinary TRO denial, this order has no expiration date. It will govern the case indefinitely unless reversed on appeal.

An order having "the practical effect of refusing an injunction" is immediately appealable under 28 U.S.C. § 1292(a)(1). *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981). The Supreme Court reaffirmed and applied that principle in *A.A.R.P. v. Trump*, 605 U.S. ___, No. 24A1007 (May 16, 2025) (per curiam), holding that a district court's inaction on an emergency TRO motion "for 14 hours and 28 minutes" had "the practical effect of refusing an injunction" sufficient to confer appellate jurisdiction under § 1292(a)(1). Doc. 23 does far more than fail to act—it announces in advance and on the record that Plaintiff will be denied injunctive relief regardless of what motion he files. The practical effect of that standing refusal is at least as conclusive as an explicit denial of a preliminary injunction, and it is immediately appealable.

The Fifth Circuit's order denying the mandamus petition as moot confirms this reading. The panel stated the mandamus was moot "in light of this Court's March 4, 2026 Order," (Doc. 26)—implicitly recognizing that Doc. 23 constitutes a judicial act resolving the injunctive-relief question, not a procedural non-event. If Doc. 23 were the legal nullity Defendants now suggest, it could not have mooted anything.

## II. THE INJUNCTION SOUGHT PRESERVES, RATHER THAN ALTERS, THE CONSTITUTIONALLY RELEVANT STATUS QUO.

Defendants argue that the requested relief would give Plaintiff ultimate relief rather than preserve the status quo, citing *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) (per curiam), and *Ramos v. de Anda-Ybarra*, No. 3:25-CV-00503-LS,

2025 WL 3220100 (W.D. Tex. Nov. 7, 2025). That argument conflates two distinct questions and, as to *Sambrano*, relies on authority that in fact favors Plaintiff.

The status quo for purposes of preliminary injunctive relief is the last peaceable, uncontested condition that preceded the present controversy—not the status at the moment suit is filed. Plaintiff held an unmarked United States passport for years following his August 10, 2016 Texas dismissal. The endorsement was not applied until later, upon passport renewal under the International Megan's Law regime. The last peaceable, uncontested condition is therefore Plaintiff holding a standard passport—the same document every other similarly-situated citizen holds. Enjoining the endorsement restores that pre-controversy status; it does not create a new one.

Defendants' reliance on *Sambrano* is particularly striking because *Sambrano* itself reversed a district court's denial of preliminary injunctive relief and held that being coerced to act against deeply held convictions is an irreparable injury that cannot be undone by money damages. 2022 WL 486610, at *4–*6. If *Sambrano* bears on this case at all, it supports Plaintiff's irreparable-harm showing. A citizen compelled to carry government speech falsely branding him a "convicted" offender each time he crosses a border suffers precisely the kind of ongoing, coercive, dignitary injury that *Sambrano* held cannot be remedied by an eventual damages award.

Even assuming the relief were characterized as mandatory, Plaintiff satisfies the "clear entitlement" standard. See *Justin Indus., Inc. v. Choctaw Sec., L.P.*, 920 F.2d 262 (5th Cir. 1990). The IML endorsement affixed to Plaintiff's passport states that the bearer "was convicted of a sex offense against a minor." Under Texas law, Plaintiff has no conviction. His deferred adjudication was dismissed on August 10, 2016, pursuant to Texas Code of Criminal Procedure Article 42A.111. Subsection (c) of that article expressly provides that "a dismissal and discharge under this article may not be considered a conviction for the purposes of disqualifications or disabilities

imposed by law for conviction of an offense." Tex. Code Crim. Proc. art. 42A.111(c). The government's passport endorsement is, under the controlling state law of the jurisdiction where Plaintiff's case was adjudicated, factually and legally incorrect as applied to him. That is the definition of clear entitlement.

## III. PLAINTIFF'S EVIDENCE OF IRREPARABLE HARM IS DOCUMENTED, NOT CONCLUSORY.

Defendants characterize Plaintiff's evidence as "conclusory and unsubstantiated," citing *Higgins v. Lumpkin*, No. 21-20058, 2022 WL 1517039, at *1 (5th Cir. May 13, 2022) (per curiam). *Higgins* is both unpublished and non-precedential under Fifth Circuit Rule 47.5.4, and it addressed a record devoid of supporting documentation. That is not this record.

Plaintiff has not merely alleged harm; he has documented it through a sworn Supplemental Declaration executed under 28 U.S.C. § 1746, supported by eleven authenticated exhibits:

- The airline's official system record stating "AS PER DXB IMMIGRATION PAX NOT OK TO BOARD" for Emirates Flight EK 6062 on January 21, 2026 (Doc. 21, Ex. K; authenticated at Doc. 21 ¶ 37(k));
- The Sharjah Publishing City Free Zone Certificate of Formation dated June 20, 2024, the corresponding Business License, and the Share Certificate documenting Plaintiff's 99% ownership of Genie Tech FZC LLC and his AED 99,000 capital contribution (Doc. 21, Exs. B, C, D; authenticated at Doc. 21 ¶ 37(b)–(d));
- Documentation that Plaintiff's UAE investor visa, Emirates ID, and business establishment have been revoked or affected as a direct result of the January 21, 2026 denial of boarding (Doc. 21 ¶ 17; Exs. E, F, G, H); and
- Sworn declarations detailing the 2004 deferred adjudication, the August 10, 2016 dismissal under Article 42A.111, the January 21, 2026 denial of boarding, the destruction of $100,000 in UAE investments, and the imminent threat to an $80,000 Indonesia investment (Doc. 20, Ex. C ¶¶ 2–15; Doc. 21 ¶¶ 12–27, 30).

That record is not comparable to the unsupported allegations at issue in *Higgins*. It consists of sworn testimony corroborated by authenticated airline records, UAE government-issued documents, and contemporaneous corporate instruments.

Defendants further argue that an injunction cannot prevent an economic loss that "has already" occurred. That argument misconceives the ongoing nature of Plaintiff's injury. While the $100,000 in SPC Free Zone investments has been lost, Plaintiff continues to suffer irreparable harm in three additional forms, each independently sufficient to support injunctive relief. First, each time Plaintiff presents his passport he is compelled to convey a government-authored statement falsely representing a legal fact that does not exist under the controlling state law of adjudication—a compelled-speech injury that is per se irreparable. See *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Second, Plaintiff's $80,000 Indonesia investment in PT Indonesia Estate Group, also documented in the record (Doc. 21 ¶¶ 21–27; Ex. A), remains at imminent risk of the same destruction that befell the UAE investment, and that harm has not yet occurred. Third, Plaintiff is foreclosed from rebuilding international business relationships so long as the false endorsement remains on his passport. None of these harms is compensable by money damages, and none will be remedied by a favorable merits judgment years from now.

Finally, Defendants assert that Plaintiff's harm is attributable to his "criminal offense, not the passport identifier." That premise is legally wrong because Plaintiff has no criminal conviction under the state law that adjudicated his case. See Tex. Code Crim. Proc. art. 42A.111(c). It is also factually wrong as to causation. The airline system record (Doc. 21, Ex. K) documents that Dubai Immigration reviewed Plaintiff's passport and denied clearance. Plaintiff's previous, unmarked passport had permitted him to enter the UAE, establish a business, obtain an investor visa, and

secure residency. Only the marked passport triggered the denial. The causal chain runs directly from the federally-affixed endorsement to the loss of boarding clearance and the destruction of Plaintiff's business.

## IV. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR PLAINTIFF

Defendants incorporate their motion-to-dismiss arguments on these factors. When the government is the opposing party, the balance-of-equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The government faces no cognizable harm from suspending a single passport endorsement in a case where the underlying Texas adjudication resulted in dismissal. The IML Angel Watch notification system continues to operate through established channels regardless of what appears on Plaintiff's passport. Meanwhile, Plaintiff bears the daily constitutional burden of carrying a federally-issued document stamped with a statement that is untrue under the law of the jurisdiction that adjudicated his case. The public interest is served, not disserved, by preventing enforcement of a provision that, as applied to an individual without a conviction, communicates a falsehood to foreign sovereigns.

## CONCLUSION

The motion for injunction pending appeal should be granted. In the alternative, Plaintiff respectfully requests that this Court issue a reasoned order with specific findings of fact and conclusions of law, including an explicit ruling on jurisdiction under 28 U.S.C. § 1292(a)(1), so that the record is fully developed for appellate review.

Respectfully submitted,

RAMON CAMPBELL
Plaintiff, Pro Se
6005 Isabella Drive
El Paso, Texas 79912
Telephone: (915) 247-6173
Email: rayept@outlook.com

Dated: April 12, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2026, a true and correct copy of the foregoing Reply was served upon counsel for Defendants via email addressed to: Anna E. Arreola, Assistant United States Attorney, United States Attorney's Office for the Western District of Texas, 700 E. San Antonio, Suite 200, El Paso, Texas 79901; Anna.Arreola@usdoj.gov.

RAMON CAMPBELL