FILED
2026 SEP 21 PM 4:34
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ___ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **RAMON CAMPBELL,** *Plaintiff,* | § | |
| v. | § | |
| | § | **Cause No. 3:25-cv-00260-LS** |
| **MARCO RUBIO, in his official capacity as Secretary of State; MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; TODD BLANCHE, in his official capacity as Acting Attorney General of the United States; and the UNITED STATES OF AMERICA,** *Defendants.* | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF[1]**

TO THE HONORABLE LEON SCHYDLOWER, UNITED STATES DISTRICT JUDGE:

Plaintiff Ramon Campbell, proceeding pro se, files this First Amended Complaint pursuant to the Court's Memorandum Opinion and Order of September 7, 2026 (ECF No. 35), and respectfully shows the Court as follows:

**INTRODUCTION**

1. The United States has issued Plaintiff a passport that states, in words chosen by the Department of State: "The bearer was convicted of a sex offense against a minor, and is a covered sex offender pursuant to 22 United States Code Section 212b(c)(1)."

2. Plaintiff was never convicted of a sex offense against a minor, or of any offense. In 2004 a Texas court placed him on deferred adjudication community supervision without

[1] Plaintiff's legal name is Ramon Campbell. Certain prior filings in this action, including the case caption, identified him as "Raymond Campbell." Plaintiff is the same individual, and no substitution of parties is intended. A notice requesting correction of the docket is filed contemporaneously.

adjudicating his guilt. He completed it. On August 10, 2016, the court dismissed the proceedings against him and discharged him. Under the statute governing that dismissal, it "may not be deemed a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense." No judgment of conviction has ever been entered against him in any court.

3. Congress did not require Plaintiff's passport to say that he was convicted. The International Megan's Law requires only a "unique identifier," which Congress defined as a visual designation "indicating that the individual is a covered sex offender." 22 U.S.C. § 212b(c)(2). And Congress defined "covered sex offender" to include persons who have never been convicted of anything but are required to register "on the basis of an offense against a minor." 34 U.S.C. § 21503(f)(2). The sentence asserting a conviction is the State Department's own.

4. On April 30, 2024, the State Department issued Plaintiff a ten-year passport book and a passport card, neither bearing any identifier. He traveled to the United Arab Emirates on that passport, formed a company, obtained investor residency, and invested approximately $180,000 there and in Indonesia. On March 20, 2025, the State Department revoked both documents on the sole basis of a certification from the Angel Watch Center that the Department says it cannot examine or override. The documents were seized at the border. The replacement passport carries the statement quoted above. On January 21, 2026, after reviewing that passport, Dubai immigration authorities refused Plaintiff clearance to board his flight. His residency was cancelled and his investment in the UAE was lost.

5. No official of the United States has ever determined that Plaintiff was convicted of anything, and no forum exists in which he may contest the assertion. The State Department told him that "[t]here is no administrative appeal." The Angel Watch Center never responded to the complaint he submitted on June 28, 2025. When he renewed it on September 17, 2026, the Center's only reply was an automated message describing its passport-marking and notification programs as applying to "individuals who have been convicted"—which, by the Center's own description, excludes him.

6. Plaintiff asks the Court to declare that the statement in his passport is inaccurate as applied to him and contrary to the statute; to set aside the agency actions that rest on it; to direct Defendants to issue him a passport that does not state that he was convicted; and, on his constitutional claims, a passport bearing no identifier.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the Administrative Procedure Act, 5 U.S.C. §§ 701–706. The Court may grant declaratory relief under 28 U.S.C. §§ 2201–2202. The United States has waived sovereign immunity for this action, which seeks relief other than money damages, under 5 U.S.C. § 702.

8. Venue is proper in this district under 28 U.S.C. § 1391(e)(1). Defendants are officers and agencies of the United States sued in their official capacities, Plaintiff resides in El Paso County, Texas, a substantial part of the events giving rise to the claims occurred in this district, and no real property is involved.

## PARTIES

9. Plaintiff Ramon Campbell is a citizen of the United States who resides in El Paso, Texas.

10. Defendant Marco Rubio is the Secretary of State and is sued in his official capacity. The Department of State issues, endorses, and revokes United States passports, and it selected the wording of the endorsement at issue.

11. Defendant Markwayne Mullin is the Secretary of Homeland Security and is sued in his official capacity. The Angel Watch Center, a component of Homeland Security Investigations within U.S. Immigration and Customs Enforcement, certifies to the Department of State that individuals are "covered sex offenders" under 22 U.S.C. § 212b and is charged by statute with reviewing complaints of erroneous designation. 34 U.S.C. § 21503(e)(5), (e)(7).

12. Defendant Todd Blanche is the Acting Attorney General of the United States and is sued in his official capacity. The Department of Justice administers the Sex Offender Registration and Notification Act and issues the guidelines interpreting the term "convicted" on which Defendants rely. 34 U.S.C. § 20912(b).

13. Defendant United States of America is the sovereign responsible for the acts of the foregoing officers and agencies. Any successor to a named official is substituted automatically under Federal Rule of Civil Procedure 25(d).

## FACTUAL ALLEGATIONS

### A. The 2004 Deferred Adjudication and the 2016 Dismissal

14. In 2004, in Cause No. 20040D00525 in the 120th Judicial District Court of El Paso County, Texas, Plaintiff entered a plea of guilty to aggravated sexual assault of a child. The court did not adjudicate guilt. It deferred further proceedings and placed Plaintiff on ten years of deferred adjudication community supervision under former Texas Code of

Criminal Procedure Article 42.12, § 5(a). A true copy of the court's order is attached as **Exhibit A.**

15. Under that procedure, the court "defer[s] further proceedings without entering an adjudication of guilt." Former Tex. Code Crim. Proc. art. 42.12, § 5(a). No judgment of conviction is entered. Guilt is adjudicated only if the defendant violates a condition of supervision. If he completes supervision, "the judge shall dismiss the proceedings against the defendant and discharge him." Id. § 5(c).

16. Plaintiff completed all ten years of community supervision without violation.

17. On August 10, 2016, the court dismissed the proceedings against Plaintiff and discharged him under former Article 42.12, § 5(c). A true copy of the order is attached as **Exhibit B.** (Article 42.12 was recodified, without substantive change to this provision, as Article 42A.111, effective January 1, 2017.)

18. The statute governing that dismissal provided: "Except as provided by Section 12.42(g), Penal Code, a dismissal and discharge under this section may not be deemed a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense." Former Tex. Code Crim. Proc. art. 42.12, § 5(c). The single exception—use of a prior deferred adjudication to enhance punishment in a later Texas prosecution—confirms the general rule.

19. The Fifth Circuit has recognized that when a Texas defendant successfully completes deferred adjudication, the case, "for most legal purposes, 'disappears'": "the proceedings are dismissed, the defendant is discharged, and the defendant is deemed not to have a conviction for many purposes." *United States v. Mills*, 843 F.3d 210, 214 (5th Cir. 2016) (quoting *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004)).

20. No judgment of conviction has ever been entered against Plaintiff in any court.

**B. Plaintiff's Registration Obligation Rests on an Adjudication, Not a Conviction**

21. Plaintiff is required to register under Chapter 62 of the Texas Code of Criminal Procedure. He does not contest that obligation in this action.

22. Texas imposes that obligation not because Plaintiff was convicted, but because Chapter 62 separately reaches deferred adjudications. Article 62.001(5) defines a "reportable conviction or adjudication" as "a conviction or adjudication, including an adjudication of delinquent conduct or a deferred adjudication." The Legislature listed deferred adjudication separately from conviction because it is not one.

23. The Attorney General of Texas has confirmed the distinction. Addressing a deferred adjudication discharged under former Article 42.12, § 5(c), the Attorney General concluded that the discharge means the disposition is not treated as a conviction, and that the continuing duty to register rests on the deferred adjudication's status as an "adjudication" under Chapter 62. Tex. Att'y Gen. Op. No. GA-1077 (2014).

24. Plaintiff's registration obligation therefore rests on an adjudication, not on a conviction. Plaintiff's original complaint alleged that he was required to register "under federal law" and was "therefore subject to the passport marking requirement." Plaintiff withdraws that characterization. His registration obligation arises under Texas law on the basis described in this section.

**C. The International Megan's Law and the State Department's Endorsement**

25. The International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders, Pub. L. No. 114-119, 130

Stat. 15, was enacted on February 8, 2016. Its passport provision is codified at 22 U.S.C. § 212b.

26. Section 212b(b)(1) provides that the Secretary of State "shall not issue a passport to a covered sex offender unless the passport contains a unique identifier, and may revoke a passport previously issued without such an identifier of a covered sex offender." Revocation is discretionary.

27. Section 212b(c)(1) defines a "covered sex offender" as an individual who "(A) is a sex offender, as defined in section 21503(f) of title 34; and (B) is currently required to register under the sex offender registration program of any jurisdiction."

28. Section 21503(f) of Title 34, in turn, defines "sex offender" in two alternative ways: "(1) a covered sex offender"—which 34 U.S.C. § 21502(3) defines as "an individual who is a sex offender by reason of having been convicted of a sex offense against a minor"—"or (2) an individual required to register under the sex offender registration program of any jurisdiction or included in the National Sex Offender Registry, on the basis of an offense against a minor."

29. Congress thus expressly extended the identifier requirement to persons who have never been convicted of a sex offense against a minor but who are required to register on the basis of one. This Court so held. ECF No. 35 at 3 ("All told, if an individual must register, his passport must be marked, even if he has no conviction.").

30. Section 212b(c)(2) defines the "unique identifier" as "any visual designation affixed to a conspicuous location on the passport indicating that the individual is a covered sex offender." Nothing in the statute requires, authorizes, or contemplates a statement that the bearer was convicted.

31. Neither the International Megan's Law nor the Sex Offender Registration and Notification Act defines "convicted" as that word is used in 34 U.S.C. § 21502(3). SORNA's only definition of the term, 34 U.S.C. § 20911(8), addresses juvenile delinquency adjudications and nothing else. ECF No. 35 at 4.

32. When Congress intends a disposition like Plaintiff's to be treated as a conviction, it says so. In the Immigration and Nationality Act, Congress defined "conviction" to include a case in which "adjudication of guilt has been withheld" if the alien pleaded guilty and the court ordered some restraint on liberty. 8 U.S.C. § 1101(a)(48)(A). And when Congress intends to exclude dispositions that have been set aside, it says that too. 18 U.S.C. § 921(a)(20) (excluding convictions that have been "expunged, or set aside"). Congress did neither in the International Megan's Law.

33. The State Department chose the wording of the endorsement. The Department describes it publicly as "a statement printed inside the passport book," and in its March 20, 2025 letter to Plaintiff (**Exhibit C**) described it as "the unique identifier placed by the Department." The endorsement reads: "The bearer was convicted of a sex offense against a minor, and is a covered sex offender pursuant to 22 United States Code Section 212b(c)(1)."

34. The Department applies that single sentence to every person certified under § 212b, including persons certified under the second prong of § 21503(f)—persons who, by Congress's own definition, need never have been convicted.

35. Separately from the passport endorsement, the statute directs the Angel Watch Center to transmit advance notification of a covered sex offender's international travel to the destination country, 34 U.S.C. § 21503(e), and requires the Center to receive and

promptly review complaints "from individuals affected by erroneous notifications," id. § 21503(e)(7). The passport endorsement is therefore not the mechanism by which foreign governments are informed of a traveler's status; the notification system is. The endorsement adds only a statement in the traveler's own hands.

36. The Department began placing the endorsement in passports on October 31, 2017—more than fourteen months after the Texas court dismissed the proceedings against Plaintiff.

**D. The April 30, 2024 Passports and Plaintiff's Reliance on Them**

37. On April 30, 2024, the Department of State issued Plaintiff United States Passport Book No. A38240147, valid through April 29, 2034, and United States Passport Card No. C33411671. Neither bore any identifier or endorsement.

38. Plaintiff's legal status on April 30, 2024 was identical in every respect to his status today: the same 2004 deferred adjudication, the same 2016 dismissal, and the same registration obligation under Chapter 62.

39. In reliance on the passport the United States had issued him, Plaintiff traveled to the United Arab Emirates and, on June 20, 2024, formed Genie Tech FZC LLC in the Sharjah Publishing City Free Zone. On August 5, 2024, the UAE issued him an investor/partner entry permit, and on August 9, 2024, a resident identity card and residence permit, each issued against Passport No. A38240147. He invested approximately $100,000 in that enterprise, on which seven individuals depended for their UAE residency, and approximately $80,000 in Indonesia Estate Group, a company being established in Bali, Indonesia. His UAE status required his physical presence in the country at least once every six months.

40. The documents establishing these facts are already before the Court as exhibits to Plaintiff's Supplemental Declaration (ECF No. 21) and Emergency Supplement (ECF No. 20), which Plaintiff adopts by reference under Federal Rule of Civil Procedure 10(c) and of which the Court may take judicial notice.

41. Plaintiff traveled to the United Arab Emirates on Passport No. A38240147 on multiple occasions between June 2024 and the Department's revocation of that passport, and was admitted without incident on each occasion.

**E. The March 20, 2025 Revocation**

42. On March 20, 2025, the Department of State, Bureau of Consular Affairs, Passport Services, sent Plaintiff a letter by email revoking Passport Book No. A38240147 and Passport Card No. C33411671. **Exhibit C.**

43. The letter cited 22 C.F.R. §§ 51.60(a)(4) and 51.62(a)(1) and stated that those regulations "provide that a U.S. passport may be revoked when the bearer is a covered sex offender."

44. The letter identified a single basis for the revocation: that the Angel Watch Center "certified to the Department of State that you are a covered sex offender in accordance with 22 U.S.C. § 212b."

45. The letter identified no conviction, no judgment, no court, and no record. It stated: "The Department of State has no further information concerning your status as a covered sex offender as defined in 22 U.S.C. § 212b(c)(1). All questions regarding your status as a covered sex offender must be addressed with the Department of Homeland Security. The Department of State cannot override this designation."

46. The letter stated: "There is no administrative appeal before the Department of State." The Department's regulations exclude actions taken under 22 C.F.R. § 51.60(a) from the

hearing procedures otherwise available to persons whose passports are denied or revoked. 22 C.F.R. § 51.70(b)(1).

47. The letter demanded that Plaintiff surrender both documents, warned that "[a]ny further use of this U.S. passport book or card is a felony," citing 18 U.S.C. § 1544, and advised that he could apply for a passport bearing the endorsement, which the letter quoted in full.

48. Federal law makes it unlawful for a United States citizen to depart from or enter the United States without a valid passport. 8 U.S.C. § 1185(b). Having no lawful alternative, Plaintiff applied for a replacement. On July 3, 2025, the Department issued Passport Book No. A36614147, bearing the endorsement quoted above. Plaintiff received it some time thereafter.

49. On July 28, 2025, when Plaintiff returned to the United States through George Bush Intercontinental Airport in Houston, U.S. Customs and Border Protection seized Passport Book No. A38240147.

50. Thereafter, when Plaintiff returned to the United States from Ciudad Juárez through the El Paso port of entry, U.S. Customs and Border Protection seized Passport Card No. C33411671, which bore no endorsement, and told him that he was not permitted to hold a passport card because of his status. See 22 C.F.R. § 51.60(g).

51. Eleven months elapsed between the Department's issuance of the unmarked passports and its decision to revoke them. Nothing about Plaintiff's legal status changed in that period. The Department has never explained why it exercised its discretion to revoke, or why it did so when it did.

## F. Plaintiff's Complaint to the Angel Watch Center

52. The Angel Watch Center is required by statute to provide the Department of State a "written determination" regarding an individual's status as a covered sex offender, 34 U.S.C. § 21503(e)(5); 22 U.S.C. § 212b(a), and to "establish a mechanism to receive complaints from individuals affected by erroneous notifications" and "ensure that any complaint is promptly reviewed," 34 U.S.C. § 21503(e)(7)(A).

53. On June 28, 2025, Plaintiff submitted a written complaint to the Angel Watch Center at the address the Department of State's letter directed him to use, dhsintermeganslaw@ice.dhs.gov, contesting the certification and explaining that his case had been dismissed without adjudication of guilt.

54. The Angel Watch Center did not acknowledge or respond to the complaint.

55. On September 17, 2026, Plaintiff renewed the complaint by email to the same address, enclosing the 2004 order, the August 10, 2016 dismissal, and the Department of State's revocation letter, and requesting (a) a statement of whether the Center certified him under the first or second prong of 34 U.S.C. § 21503(f), (b) a copy of the written determination transmitted to the Department of State and of any notification transmitted to a foreign government concerning his travel, and (c) correction of the certification.

56. The same day, the Center's email address returned an automatic reply. A true copy is attached as **Exhibit D**. The reply states that inquiries "will not receive a response unless they include the completed Certification of Identity form." No such requirement was communicated to Plaintiff in the Department of State's revocation letter, which directed him to that email address without qualification, and no reply of any kind was sent in response to his June 28, 2025 complaint. On September 21, 2026, Plaintiff resubmitted

the complaint with the completed Certification of Identity form. As of the date of this filing, the Center has not responded.

57. The Center's automatic reply describes its programs in its own words. It states that the Center "provides advanced notification to foreign countries when individuals *convicted* of covered sexual offenses involving minors have upcoming international travel," and that those notifications "provide basic passenger and *conviction* information." It states that the passport marking applies to "individuals who have been *convicted* of a covered sexual offense against a minor and are required to register as a sex offender." And it invites complaints from any person who believes he has "been mistakenly identified as an individual convicted of a sex offense involving a minor." (Emphasis added.)

58. By the Center's own description, therefore, both the notification program and the passport marking are predicated on a conviction, and the information the Center transmits to foreign governments is "conviction information." Plaintiff has no conviction. He is, in the Center's own words, a person "mistakenly identified as an individual convicted of a sex offense involving a minor."

59. Plaintiff has never been told whether the Angel Watch Center certified him as a person "convicted of a sex offense against a minor" or as a person required to register, or on what record it relied. He has never received the written determination the statute requires.

**G. The January 21, 2026 Refusal and Its Consequences**

60. On January 4, 2026, Plaintiff purchased a round-trip ticket on Emirates Airline from El Paso to Dubai, departing January 21 and returning January 29, 2026, to maintain his UAE residency and attend to his business.

61. On January 21, 2026, at George Bush Intercontinental Airport in Houston, Plaintiff attempted to check in for Emirates Flight EK 212 to Dubai. The airline transmitted his passport and UAE residency documents to Dubai immigration authorities for pre-clearance. The airline's system record states: "SENT TO DXB IMMIGARTIONS FOR CLEARENCE" and "AS PER DXB IMMIGARTION PAX NOT OK TO BOARD." ECF No. 21, Ex. K. Plaintiff was denied boarding.

62. January 21, 2026 was the first occasion on which authorities of the United Arab Emirates reviewed Passport Book No. A36614147. Plaintiff's UAE residency documents were current and had been updated to reflect that passport before travel. Before the endorsement, Plaintiff had never been refused entry to, or clearance to travel to, the United Arab Emirates.

63. On information and belief, in connection with Plaintiff's January 2026 travel the Angel Watch Center transmitted a notification to the United Arab Emirates under 34 U.S.C. § 21503(e). Plaintiff has not been provided the notification. By the Center's own description of its notifications (**Exhibit D**), it conveyed "conviction information" about a person who has no conviction.

64. As a result, Plaintiff's Emirates ID was cancelled, his UAE residence visa was revoked, he lost access to his personal and business bank accounts in the UAE, his approximately $100,000 investment in Genie Tech FZC LLC was forfeited to the free zone authority under the terms of his establishment agreement, the seven individuals who depended on that enterprise lost their residency status, and his approximately $80,000 investment in Indonesia Estate Group—whose registration requires submission of his passport—was placed at imminent risk. ECF No. 21 ¶¶ 17–30. Plaintiff has been advised that, upon

presentation of a corrected passport and an official statement from the United States that the prior designation was erroneous, he may be able to restore his UAE residency and recover a substantial part of his investment, subject to penalties. That opportunity diminishes with each month the erroneous designation remains uncorrected.

65. Every time Plaintiff presents his passport—to foreign border officials, airlines, hotels, banks, and business counterparties—he is compelled to present the United States government's statement that he was convicted of a sex offense against a minor.

66. These harms are continuing. Sovereign immunity bars an award of damages against the United States for them, and Plaintiff has no adequate remedy at law.

**H. No Authority Construes "Convicted" as Used in the International Megan's Law**

67. Plaintiff is aware of no decision of any court construing the word "convicted" as it is used in 34 U.S.C. § 21502(3) or 22 U.S.C. § 212b, or addressing whether a passport endorsement may assert that the bearer "was convicted" when no judgment of conviction was ever entered. This Court observed that Defendants' response to Plaintiff's original complaint was "devoid of binding or persuasive law directly on point." ECF No. 35 at 4.

68. The decisions treating Texas deferred adjudications as "convictions" arose under other statutes, with their own text, commentary, and purposes: enhancements under the Sentencing Guidelines and 21 U.S.C. § 841, *Mills*, 843 F.3d at 214–16; *United States v. Cisneros*, 112 F.3d 1272 (5th Cir. 1997); the immigration statute, which expressly defines the term, 8 U.S.C. § 1101(a)(48)(A); and the federal firearms statute, *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103 (1983), which Congress thereafter superseded by statute as to convictions set aside, *Logan v. United States*, 552 U.S. 23 (2007). "[T]he meaning of a word cannot be determined in isolation, but must be drawn from the context

in which it is used." *Deal v. United States*, 508 U.S. 129, 132 (1993). The Fifth Circuit itself has recognized that its holdings under those provisions, "although instructive, … do not fully resolve the meaning of 'conviction'" even in a neighboring Guidelines provision. *Mills*, 843 F.3d at 215.

69. Those decisions also rest on a rationale foreign to this case. In *Mills*, the Fifth Circuit relied on the policy, drawn from *Cisneros*, that counting deferred adjudications as convictions "would promote the policy that defendants who obtain the advantage of a rehabilitative sentence but nevertheless continue to commit crimes should not receive further leniency," 843 F.3d at 216 (quoting *Cisneros*, 112 F.3d at 1281), and on the principle that "a recidivist offender … may not doubly benefit from the fortune of a lenient disposition in the Texas courts," *id.* (quoting *United States v. Daniels*, 588 F.3d 835, 837 (5th Cir. 2009)). Plaintiff has not reoffended in twenty-two years. And the Fifth Circuit expressly confined its reliance on *Dickerson* to "defendants placed on probation as a result of deferred adjudication but who have not yet successfully completed that term." *Id.* Plaintiff completed his term a decade ago.

70. The Attorney General's National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030 (July 2, 2008), state that for purposes of SORNA an adult is "convicted" if he "remains subject to penal consequences based on the conviction, however it may be styled." Since August 10, 2016, Plaintiff has been subject to no penal consequence of any kind. His only continuing obligation is registration, which the State of Texas and the United States both maintain is a civil, non-punitive regulatory measure. Under the government's own test, no penal consequence remains, and Plaintiff is not "convicted."

71. The only appellate decision applying that test to a withheld adjudication, *United States v. Bridges*, 741 F.3d 464 (4th Cir. 2014), asked whether a Florida plea with adjudication withheld triggered a duty to register under SORNA. It did not address a passport endorsement, involved a state procedure with no counterpart to former Article 42.12, § 5(c), and is not binding in this Circuit.

**I. This Court's September 7, 2026 Order**

72. On September 7, 2026, this Court denied Defendants' motion to dismiss, holding that Plaintiff "viably alleges, at least at the pleadings stage of this lawsuit, that part of the statement is false and should not be marked on his passport," that Subtitle II of Title 34 "does not define 'conviction,'" and that "the factual accuracy of Campbell's passport mark remains an open question." ECF No. 35 at 1, 4. The Court granted Plaintiff leave to amend. This pleading follows that order.

## CLAIMS FOR RELIEF

### COUNT I

### Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C)—

### The Endorsement as Applied to Plaintiff

73. Plaintiff incorporates the foregoing paragraphs.

74. The Department of State's adoption of the endorsement text and its issuance to Plaintiff of a passport bearing that text are final agency actions for which there is no other adequate remedy in a court. 5 U.S.C. § 704.

75. The endorsement is "in excess of statutory … authority" and "not in accordance with law." 5 U.S.C. § 706(2)(A), (C). Section 212b(c)(2) authorizes a designation "indicating

that the individual is a covered sex offender." It does not authorize the Department to assert, as a fact, that the bearer was convicted. As applied to Plaintiff, the assertion is contrary to the judgment of the court that disposed of his case and to the law of the jurisdiction that governs that judgment.

76. The endorsement is "arbitrary, capricious, [and] an abuse of discretion." 5 U.S.C. § 706(2)(A). Congress defined the class subject to the identifier to include persons who have never been convicted. The Department nonetheless adopted a single text asserting a conviction for every member of that class, without considering—or, on information and belief, without ever addressing—whether that text is true of the persons Congress included under 34 U.S.C. § 21503(f)(2). An agency that adopts one factual statement for two statutorily distinct classes, one of which the statement does not describe, has failed to consider an important aspect of the problem.

77. The Attorney General's guidelines interpreting SORNA's registration trigger do not supply the missing authority. They interpret a different statute administered by a different agency for a different purpose; the Department of State did not rely on them in adopting its text; and, in any event, they are not entitled to deference on the meaning of a statute. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Even on their own terms, they do not describe Plaintiff, who has been subject to no penal consequence since 2016.

78. Plaintiff is entitled to a declaration that the endorsement, as applied to him, is contrary to law, and to an order setting aside the issuance of a passport bearing a statement that he was convicted.

**COUNT II**

**Administrative Procedure Act, 5 U.S.C. § 706(1), (2)(A)—**

**The Certification, the Revocation, and the Failure to Review**

79. Plaintiff incorporates the foregoing paragraphs.

80. The Angel Watch Center's certification to the Department of State that Plaintiff is a covered sex offender, any notification the Center transmitted to a foreign government describing Plaintiff as convicted of a sex offense against a minor, and the Department of State's March 20, 2025 revocation of Plaintiff's passports, are final agency actions.

81. The certification is arbitrary and capricious. On information and belief, the Center issued it without identifying the statutory prong on which it relied, without identifying any judgment of conviction, without notice to Plaintiff, and without the "written determination" the statute requires. 22 U.S.C. § 212b(a); 34 U.S.C. § 21503(e)(5). If the Center certified Plaintiff as a person "convicted of a sex offense against a minor," that certification is contrary to the record. If it certified him under 34 U.S.C. § 21503(f)(2), then the resulting endorsement asserts a fact the Center never found.

82. The revocation is arbitrary and capricious. Revocation under 22 U.S.C. § 212b(b)(1) is discretionary. The Department exercised that discretion eleven months after issuing the passports, without any change in Plaintiff's status, without any stated reason for its timing, and on the sole basis of a certification the Department disclaimed any capacity to examine. An agency that acts on a determination it says it cannot review, and offers no reason of its own, has not engaged in reasoned decision-making.

83. The Center's failure to review Plaintiff's June 28, 2025 complaint, or to respond to it in the fifteen months since, is agency action "unlawfully withheld or unreasonably

delayed." 5 U.S.C. § 706(1); 34 U.S.C. § 21503(e)(7)(A)(ii) ("shall … ensure that any complaint is promptly reviewed").

84. Plaintiff is entitled to an order setting aside the certification, any such notification, and the revocation to the extent they rest on a determination that he was convicted, and compelling the Center to review and respond to his complaint.

**COUNT III**

**Fifth Amendment—Procedural Due Process**

85. Plaintiff incorporates the foregoing paragraphs.

86. Plaintiff has a liberty interest in international travel, *Kent v. Dulles*, 357 U.S. 116, 125–27 (1958), and a liberty interest, protected by the Due Process Clause, in not being subjected to a false and stigmatizing statement by the government that is accompanied by an alteration of his legal status. *Paul v. Davis*, 424 U.S. 693, 708–12 (1976); *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971).

87. Defendants have deprived Plaintiff of those interests. The statement that he "was convicted of a sex offense against a minor" is false and stigmatizing. It was accompanied by the revocation of two valid passports, the seizure of his travel documents, exposure to felony liability for their use, the imposition of a marked passport as the sole lawful means of international travel, and the resulting loss of his foreign residency and property.

88. Defendants provided no process at any stage. The Angel Watch Center gave no notice before certifying. The Department of State gave no hearing after revoking, and its regulations exclude one. 22 C.F.R. § 51.70(b)(1). The Center has not reviewed Plaintiff's complaint. No official has ever determined the fact the passport asserts, and no forum exists in which Plaintiff may contest it.

89. Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the private interest is grave, the risk of erroneous deprivation under the existing procedures is total—there are none—and the government's burden in providing a written determination and an opportunity to be heard on whether a judgment of conviction exists is minimal. *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), does not hold otherwise: the Court there declined to require a hearing on a fact—current dangerousness—that was immaterial under the statute. Here the disputed fact is conviction, and it is the very fact the passport asserts.

90. Plaintiff is entitled to a declaration that Defendants have deprived him of liberty without due process of law and to an order requiring Defendants to provide the written determination and an opportunity to contest it before any passport asserting his conviction is issued or maintained.

**COUNT IV**

**First Amendment—Compelled Speech**

91. Plaintiff incorporates the foregoing paragraphs.

92. The First Amendment protects "the right to refrain from speaking at all," *Wooley v. Maynard*, 430 U.S. 705, 714 (1977), and forbids the government from compelling a person to serve as the bearer of the government's message, *id.* at 715; *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943).

93. A passport is a personal document. It bears the holder's photograph, signature, and identity, and it is presented by the holder, in person, to those who demand to know who he is. The statement inside it is read as a statement about him and, in practical effect, by

him. It is not a message the public attributes to the government in the abstract, as it might a license plate design or a monument in a public park.

94. A statute that required registrants to carry an identification card branded "SEX OFFENDER" was held to compel speech and to fail strict scrutiny by the Supreme Court of Louisiana in *State v. Hill*, 2020-00323 (La. 10/20/20), 341 So. 3d 539, and the Supreme Court of the United States denied review. The passport endorsement is more intrusive: it is longer, it is presented to foreign sovereigns, and—as applied to Plaintiff—it is false.

95. Compelling a citizen to carry and present a government statement about himself that is untrue serves no legitimate interest, let alone a compelling one. Any interest the government has in identifying registrants to foreign authorities is fully served by the advance-notification system Congress established in 34 U.S.C. §§ 21503–21504, and by a designation that accurately states the bearer's status. The endorsement as applied to Plaintiff is not narrowly tailored to any interest.

96. Plaintiff is entitled to a declaration that compelling him to carry and present the endorsement violates the First Amendment and to an order enjoining Defendants from requiring him to do so.

## COUNT V

### Article I, Section 9, Clause 3—Ex Post Facto

97. Plaintiff incorporates the foregoing paragraphs.

98. Plaintiff's conduct occurred in 2004. The proceedings against him were dismissed on August 10, 2016. The International Megan's Law was enacted on February 8, 2016, and its passport endorsement took effect on October 31, 2017. As applied to Plaintiff, the

endorsement imposes a consequence for conduct that predates the statute and that was fully adjudicated before the endorsement existed.

99. Whether a retroactive measure is punishment turns on the factors identified in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963), as applied in *Smith v. Doe*, 538 U.S. 84 (2003). Public branding and the compelled display of a badge of shame are among the historical forms of punishment. The endorsement imposes an affirmative disability—exclusion from foreign countries and the loss of the ability to conduct business abroad—that is not incidental but is its purpose. It applies without any individualized assessment and is excessive in relation to any regulatory purpose.

100. *Smith v. Doe* upheld the dissemination of accurate information about a conviction of record. A compelled statement that is false cannot be justified as a regulatory measure at all: a falsehood conveys no information a regulator could legitimately want conveyed. What remains, when the informational justification is removed, is punishment.

101. Plaintiff is entitled to a declaration that the endorsement, as applied to him, violates the Ex Post Facto Clause and to an order enjoining its application.

**COUNT VI**

**Fifth Amendment—Right to International Travel**

102. Plaintiff incorporates the foregoing paragraphs.

103. The right to travel abroad is part of the liberty protected by the Due Process Clause of the Fifth Amendment. *Kent v. Dulles*, 357 U.S. at 125–27; *Aptheker v. Secretary of State*, 378 U.S. 500, 505–06 (1964); *Haig v. Agee*, 453 U.S. 280, 306–07 (1981).

104. The endorsement, as applied to Plaintiff, has in fact prevented his travel: Dubai immigration authorities refused him clearance after reviewing it, and the same result will

follow at the border of any country that acts on the statement that he was convicted. A restriction on international travel imposed through a false statement bears no rational relationship, much less a substantial one, to any governmental interest.

105. Plaintiff is entitled to a declaration that the endorsement, as applied to him, unconstitutionally burdens his right to travel and to an order enjoining its application.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court:

A. DECLARE that the statement "The bearer was convicted of a sex offense against a minor" is inaccurate as applied to Plaintiff and that its inclusion in his passport is contrary to 22 U.S.C. § 212b(c)(2) and the Administrative Procedure Act;

B. SET ASIDE the Angel Watch Center's certification and the Department of State's March 20, 2025 revocation of Plaintiff's passports to the extent they rest on a determination that Plaintiff was convicted of a sex offense against a minor;

C. ORDER Defendant Rubio to issue Plaintiff, without further application or fee, a United States passport book that does not state that he was convicted of any offense;

D. DECLARE that the endorsement, as applied to Plaintiff, violates the First Amendment, the Ex Post Facto Clause, and the Due Process Clause of the Fifth Amendment, and ORDER Defendant Rubio to issue Plaintiff a United States passport bearing no identifier;

E. ORDER Defendant Mullin to review and respond in writing to Plaintiff's complaint under 34 U.S.C. § 21503(e)(7), to provide Plaintiff the written determination required by 22 U.S.C. § 212b(a) and 34 U.S.C. § 21503(e)(5), and to correct any certification or notification stating that Plaintiff was convicted of a sex offense against a minor;

F. ORDER Defendant Mullin to transmit to the competent authorities of the United Arab Emirates, and to any other foreign government to which the Angel Watch Center transmitted a notification concerning Plaintiff, a written corrective notification stating that Plaintiff has not been convicted of a sex offense against a minor, that any prior notification or passport endorsement describing him as convicted was erroneous, and that his United States passport has been reissued accordingly; and ORDER Defendant Rubio to provide Plaintiff a written statement, suitable for presentation to foreign authorities, confirming the same;

G. ENJOIN Defendants, their officers, agents, and employees from placing in any passport issued to Plaintiff a statement that he was convicted of an offense;

H. AWARD Plaintiff his costs and, to the extent he is represented by counsel, reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

I. GRANT such other relief as the Court deems just.

**JURY DEMAND**

Plaintiff seeks only declaratory and equitable relief and does not demand a jury.

Respectfully submitted,

Ramon Campbell

**RAMON CAMPBELL**
Plaintiff, Pro Se
6005 Isabella Drive
El Paso, Texas 79912
Telephone: (915) 247-6173
Email: rayept@outlook.com

## VERIFICATION

I, Ramon Campbell, declare under penalty of perjury under 28 U.S.C. § 1746 that I have read the foregoing First Amended Complaint and that the factual allegations in it are true and correct to the best of my knowledge, information, and belief.

Executed on September 21, 2026, in El Paso, Texas.

Ramon Campbell

## CERTIFICATE OF SERVICE

I certify that on September 21, 2026, I served a true and correct copy of the foregoing, with exhibits, on Anna Elizabeth Arreola, Assistant United States Attorney, U.S. Attorney's Office for the Western District of Texas, 700 E. San Antonio Ave., Suite 200, El Paso, Texas 79901, anna.arreola@usdoj.gov, by email.

Ramon Campbell

## EXHIBITS

Exhibit A — Order of Deferred Adjudication, 2004
Exhibit B — Order of Dismissal and Discharge, August 10, 2016
Exhibit C — Department of State Revocation Letter, March 20, 2025
Exhibit D — Angel Watch Center Automatic Reply, September 17, 2026

# EXHIBIT A

Order of Deferred Adjudication, 2004

The State of Texas
vs.
RAMON CAMPBELL

Cause No. 20040D00525
In The 120TH District Court
of El Paso County, Texas

# JUDGMENT ON PLEA OF GUILTY BEFORE THE COURT WAIVER OF JURY TRIAL

**Judge Presiding:** LUIS AGUILAR
**Date of Judgment:** SEPTEMBER 10, 2004
**Attorney for State:** JAMES CALLAN
**Attorney for Defendant:** THERESA CABALLERO
**Offense:** AGGRAVATED SEXUAL ASSAULT OF CHILD (TPC 22.021) CT.I & II
**Degree:** FIRST
**Date of Offense:** SEPTEMBER 15, 2003
**Charging Instrument:** Indictment
**Plea:** GUILTY
**Terms of Plea Bargain:** State's Recommendation
**Fine:** $500.00 ($200.00 PROBATED)
**Date Sentence Imposed:** SEPTEMBER 10, 2004
**Costs:** $223.00
**Punishment:** TEN (10) YEARS COMMUNITY SUPERVISION UNDER ARTICLE 42.12 5a
**Date to Commence:** SEPTEMBER 10, 2004

On SEPTEMBER 10, 2004, this cause was called for trial and the State appeared by her District Attorney, and the Defendant above-named appeared in person, his counsel also being present, and both parties announced ready for trial, the Defendant and his counsel having waived by written notice, duly signed by Defendant and said counsel, the ten days allowed by law to prepare for trial; and the Defendant in Open Court, in person pled GUILTY to the charge agreed by his counsel and by the State. Thereupon the said Defendant was admonished by the Court of the consequences of said plea, and that the Court is not bound by any recommendations, and the said Defendant persisted in pleading GUILTY; and it plainly appearing to the Court that the said Defendant is sane and that RAMON CAMPBELL is uninfluenced in making said plea by any consideration of fear, or by any persuasion or delusive hope of pardon, prompting to confess his plea of GUILTY, and that the said Defendant is fully aware of and does voluntarily waive his trial rights, the said plea of GUILTY is by the Court received, and here now entered of record upon the minutes of the Court as the plea herein of said Defendant. Thereupon the defendant, in person and in Open Court, waived in writing the right of trial by Jury and consented in writing to the introduction of testimony by affidavits, written statements of the witnesses, and any other documentary evidence in support of the judgment of the Court, also waived the appearance, confrontation, and cross-examination of witnesses, and requested the consent and approval of the Court to waive said rights; and whereas such consent and approval of the attorney representing the State in writing duly signed by said attorney was filed in the papers in said cause before the Defendant entered the plea of GUILTY, and the consent and approval of the Court in writing duly signed by the Court was filed, with all of such evidence, in the file of the papers of the cause, and it appears that all prerequisites required by law for the waiving of these rights have been performed; therefore the Court now gives its consent and approval for the said Defendant to waive said rights.

Whereupon the Defendant proceeded to trial before the Court, who having heard and considered the pleading offered, is of the opinion therefrom that the evidence substantiates the defendant's guilt.

Page 2
RAMON CAMPBELL
20040D00525

The Defendant has consented to deferred adjudication under the provisions of Article 42.12, Sec. 5(a), Texas Code of Criminal Procedure as amended, and the Court is of the opinion the best interest of society and the Defendant will be served by deferring further proceedings without entering an adjudication of guilt and placing this Defendant on Community Supervision.

Therefore, without entering a judgment of guilt at this time, the Court defers further proceedings and ORDERS that the Defendant, RAMON CAMPBELL, be and is hereby placed on Community Supervision for a period of TEN (10) YEARS as provided by said Article 42.12, Sec. 5(a), Texas Code of Criminal Procedure, and pay a fine of $500.00 ($200.00 PROBATED), as amended under the terms and conditions set out in Exhibit "A" hereto attached.

LUIS AGUILAR, Presiding Judge

9-16-04
Date Signed

STATE'S ATTORNEY, Approved as to Form

DEFENSE ATTORNEY, Approved as to Form

Defendant's Right
Thumb Impression:



# EXHIBIT B

Order of Dismissal and Discharge, August 10, 2016

FILED
NORMA L. FAVELA
DISTRICT CLERK

IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS
2016 AUG 11 AM 9:59
[29]TH JUDICIAL DISTRICT

EL PASO COUNTY, TEXAS
BY [signature] DEPUTY

| | | |
|---|---|---|
| STATE OF TEXAS | ) | |
| | ) | |
| vs. | ) | Cause No.20040D00525 |
| | ) | |
| Ramon Cambell | ) | |
| DOB: 03/09/1983 | ) | |

Order Discharging Defendant from Community Supervision
under TEX. CODE. CRIM. PRO. Art. 42.12 §5(c) (Deferred Adjudication)

On the 10th day of September, 2004, the Defendant in the above-entitled and numbered cause was placed on Community Supervision under the provisions of Article 42.12, Section 5(c) of the Texas Code of Criminal Procedure for a period of ten (10) years for the offense of Aggravated Sexual Assault of a Child (Cts 1&2).

☒ Defendant has completed the period of Community Supervision.

☐ Defendant has completed ______ (months/years) of Community Supervision.

The Court finds that the ends of justice have been served and that the interests of the Defendant and of society will be best served by discharge of the Defendant from further Community Supervision.

It is therefore ordered, adjudged and decreed that the proceedings entered against the Defendant in this case are dismissed.

Defendant is hereby informed that s/he may have the right to petition the Court for an order of non-disclosure under Section 411.08 of the Government Code, and that if Defendant is entitled to such remedy, the earliest date such petition may be filed is five (5) years from the date of this order.

It is further ordered, adjudged and decreed that the Community Supervision department shall provide a copy of this order to the Defendant.

Signed and entered this 10 day of August, 2016.

[signature]
Judge

# EXHIBIT C

Department of State Revocation Letter, March 20, 2025

United States Department of State

Washington, DC 20520

March 20, 2025

Ramon Campbell
6005 Isabella Drive
El Paso, TX 79912

**Via E-mail: turbonic@sbcglobal.net**

Dear Ramon Campbell:

The Department of State has revoked U.S. Passport numbers A38240147 and C33411671, issued to you on April 30, 2024, along with any other valid U.S. passports issued to you that do not contain the required passport endorsement described below, pursuant to 22 C.F.R. §§ 51.60(a)(4) and 51.62(a)(1). These regulations provide that a U.S. passport may be revoked when the bearer is a covered sex offender as defined in 22 U.S.C. § 212b(c)(1), unless the passport, no matter the type, contains the unique identifier placed by the Department as required by 22 U.S.C. § 212b. The regulations cited in this letter may be found online at http://www.ecfr.gov.

The Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, Angel Watch Center (DHS/ICE/HSI/AWC) certified to the Department of State that you are a covered sex offender in accordance with 22 U.S.C. § 212b. Therefore, you are not entitled to a U.S. passport that does not contain the passport endorsement required pursuant to that section and your passports are revoked.

Under 22 C.F.R. §§ 51.7 and 51.66, the U.S. passport remains the property of the U.S. Government and must be surrendered upon demand. Please immediately return U.S. Passport numbers A38240147 and C33411671, along with any other valid U.S. passports issued to you that do not contain the required passport endorsement, to the following address: U.S.

Department of State, ref: 4726999, CA/PPT/S/A, 44132 Mercure Circle, P.O. Box 1243, Sterling, VA 20166-1243. Any further use of this U.S. passport book or card is a felony. *See* 18 U.S.C. § 1544.

There is no administrative appeal before the Department of State. The Department of State has no further information concerning your status as a covered sex offender as defined in 22 U.S.C. § 212b(c)(1). All questions regarding your status as a covered sex offender must be addressed with the Department of Homeland Security. The Department of State cannot override this designation. If you believe you are not subject to this law you may contact DHS/ICE/HSI/AWC as follows: Department of Homeland Security, Immigration and Customs Enforcement, Angel Watch Center, dhsintermeganslaw@ice.dhs.gov.

You may apply for a U.S. passport book containing the required endorsement by properly executing a new application, presenting the appropriate identity and citizenship documents, and paying all required fees. The endorsement reads:

> **"The bearer was convicted of a sex offense against a minor, and is a covered sex offender pursuant to 22 United States Code Section 212b(c)(1)."**

Please note that pursuant to 22 C.F.R. § 51.60(g), covered sex offenders cannot be issued U.S. passport cards.

Once DHS/ICE/HSI/AWC certifies to the Department of State that you are no longer a covered sex offender as defined by 22 U.S.C. § 212b(c)(1), you will no longer be required to use a passport with this identifier.

Sincerely,

Bureau of Consular Affairs
Passport Services

# EXHIBIT D

Angel Watch Center Automatic Reply, September 17, 2026

Outlook

**Automatic reply: Renewed Complaint of Erroneous Designation – 34 U.S.C. § 21503(e)(7) – Ramon Campbell, DOB 03/09/1983 – Passport No. A36614147 – Ref. State Dept. No. 4726999**

**From** DHSInterMeganslaw, <dhsintermeganslaw@ice.dhs.gov>
**Date** Thu 9/17/2026 11:13 PM
**To** Raymond Campbell <rayept@outlook.com>

Per Public Law 114-119, International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders (International Megan's Law), the Angel Watch Center provides advanced notification to foreign countries when individuals convicted of covered sexual offenses involving minors have upcoming international travel. These notifications to the foreign countries do not include any recommended action to be taken against the individual, and only provide basic passenger and conviction information. Any action taken by foreign officials of the notified country is solely at the discretion of those foreign officials. Please visit the following link for more important information related to International Megan's Law, which has been codified in Chapter 215 of Title 34 of the U.S. Code: https://www.congress.gov/bill/114th-congress/house-bill/515/text/pl.

It is recommended that you contact the embassy of the destination country prior to any future international travel to inquire if your previous conviction for a covered sexual offense involving a minor may preclude you from entering that country upon arrival.

Additionally, per International Megan's Law, individuals who have been convicted of a covered sexual offense against a minor and are required to register as a sex offender in any United States jurisdiction are subject to the passport marking provision. The marking will be placed in the endorsement section of your passport book and will read as follows: THE BEARER WAS CONVICTED OF A SEX OFFENSE AGAINST A MINOR, AND IS A COVERED SEX OFFENDER PURSUANT TO 22 USC 212B(C)(1). If you received a notice from the Department of State that your unmarked passport was revoked, you may visit https://travel.state.gov if you require more information about how to apply for a new passport. If you would like to self-identify as an individual required to have the marking in your passport prior to receiving a revocation notice, you may do so by executing a new application and submitting it to your local passport processing office along with a written statement self-identifying yourself as subject to International Megan's Law.

If you believe that you have been mistakenly identified as an individual convicted of a sex offense involving a minor or have been convicted of a sex offense involving a minor but are no longer required to register in any United States jurisdiction and are therefore no longer subject to the passport marking requirement, please send all relevant information to dhsintermeganslaw@ice.dhs.gov along with a completed Certification of Identity form, which can be found at the following public link: https://www.ice.gov/management-administration/igp

Please note, inquiries received at this email address will not receive a response unless they include the completed Certification of Identity form and are related to a notification that has been made to a foreign government or are related to a passport marking that is already on your current passport. Questions regarding whether an individual will be subject to foreign notification for future travel or if an individual

is required to a receive passport marking on a future passport will not receive a response (please see the link for International Megan's Law above for information regarding these subjects).

Regards,

The Angel Watch Center